**Edward F. SMITH, Appellant,**

v.

**Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.**

No. 90–64.

United States Court of Veterans Appeals.

Argued Oct. 30, 1991.
Decided May 21, 1992.

Gershon M. Ratner, with whom Noe Paramo (non-attorney practitioner), Mark A. Grovic (non-attorney practitioner), and Ruth Eisenberg, Washington, D.C., were on the briefs for appellant.

David W. Engel, with whom Robert E. Coy, Acting General Counsel, Barry M. Tapp, Asst. General Counsel, and Thomas A. McLaughlin, Washington, D.C., were on the brief, for appellee.

Michael P. Horan, Washington, D.C., filed a brief, as amicus curiae.

Before KRAMER, HOLDAWAY, and STEINBERG, Associate Judges.

KRAMER, Associate Judge, filed the opinion of the Court, in which STEINBERG, Associate Judge, joined. HOLDAWAY, Associate Judge, concurring in the result, filed a separate opinion.

KRAMER, Associate Judge:

The appellant, Edward F. Smith, appeals from a September 14, 1989, Board of Veterans' Appeals (BVA) decision which denied him entitlement to retroactive pension benefits. Upon review of the record, the briefs, the arguments of the parties, and the amicus brief, the Court holds that: (1) the Veterans' Administration (now the Department of Veterans Affairs) (VA), violated its duty under 38 U.S.C. § 7722(d) (previously contained in § 241(3)) to provide aid and assistance in the preparation of the appellant's claim; (2) as a consequence of the VA's violation of its duty under § 7722(d), the one-year filing requirement for a specific request for retroactive pension benefits under 38 U.S.C. § 5110(b)(3)(A) (formerly § 3010(b)(3)(A)) was equitably tolled; and (3) the BVA's decision that the appellant was not precluded as a result of his disabilities from filing a claim for benefits for at least 30 days from the start of his permanent and total disability, is not clearly erroneous, and therefore, the BVA decision must be affirmed.

## I.

The appellant served on active duty in the United States Armed Forces from February 1953 to January 1954. On April 13, 1986, he was admitted to a private hospital for treatment of a large abscess in his left perianal region and for uncontrolled diabetes mellitus. The appellant remained in the hospital for 28 days, undergoing a number of surgical debridements of his abscess and receiving treatment to bring his diabetes under control. Eventually the appellant had a skin graft placed over his abscessed area. The skin graft and diabetes treatment were a success, and the appellant was ultimately discharged from the hospital on May 10, 1986.

Over the next seven months, the appellant lived at home, but visited his doctor quite frequently for abscess treatment follow-up, diabetes control, and treatment for a variety of other ailments. During part of this period (until his wound completely closed), the appellant also had a nurse visit him at his house 3–5 times a week in order to change the dressing on his wound. On December 23, 1986, the appellant submitted a VA Form 21–527, "Income–Net Worth and Employment Statement," noting that he was suffering from diabetes and had been hospitalized for 28 days in April 1986. The appellant also stated on the form that he wished to "reopen [his] pension claim." R. at 2–4.

On April 20, 1987, the San Francisco, California, VA Regional Office (RO) wrote to the appellant requesting verification of the duration and character of his service. The appellant provided this information on April 27, 1987. On July 10, 1987, the RO sent the appellant a VA Form 21–526, "Veteran's Application for Compensation or Pension," for him to "complete . . . for our records." R. at 9. On July 26, 1987, the appellant submitted the completed form.

On September 20, 1988, the RO granted the appellant pension benefits, effective January 8, 1987, the date that the appellant's VA Form 21–527 was received by the RO. In response, the appellant filed a Notice of Disagreement (NOD) asserting that the pension benefits should be effective April 1986, the date he became totally disabled.

On September 14, 1989, the BVA rendered its decision denying the appellant's claim for retroactive pension benefits based on an April 1986 effective date. The BVA concluded:

> To obtain an award of retroactive disability pension benefits, it must be shown by the evidence of record that the veteran was prevented from applying for benefits by reason of his disability for a period of at least 30 days beginning on the date on which he became permanently and totally disabled. In this case, the inability to apply for benefits is not shown. His hospitalization in April and May 1986 was not extensive, and the medical evidence does not establish the presence of disabilities which prevent[ed] his filing a claim for pension.

*Edward F. Smith*, BVA 90–07101, at 4 (Sept. 14, 1991). The appellant subsequently perfected an appeal to this Court.

## II.

The effective date of an award of pension benefits is usually the date on which the veteran first filed his claim with the VA. 38 U.S.C. § 5110(a) (formerly § 3010(a)). An exception to this general rule, however, is provided in a case where the veteran

> is permanently and totally disabled and ... is prevented by a disability from applying for disability pension for a period of at least 30 days beginning on the date on which the veteran became permanently and totally disabled.

38 U.S.C. § 5110(b)(3)(B) (formerly § 3010(b)(3)(B)). In such a case, 38 U.S.C. § 5110(b)(3)(A) provides that the effective date of the pension shall be "the date on which the veteran became permanently and totally disabled, if the veteran applied for a retroactive award within one year of such date." If the veteran fails to apply for a retroactive award within one year of this date, the effective date of the award will be the date of application. 38 U.S.C. § 5110(b)(3)(A) (formerly § 3010(b)(3)(A)).

Both parties agree, and the record plainly shows, that when the appellant requested disability pension benefits, in submitting a VA Form 21–527 to the VA within a year of becoming totally disabled, he did not note or request retroactive pension benefits. In fact, the appellant did not file with the VA any form even mentioning retroactive pension benefits until November 28, 1988, at which time he filed an NOD to the RO decision granting him disability pension benefits effective on the date his claim was received by the VA. Therefore, even if the appellant met the requirements of 38 U.S.C. § 5110(b)(3)(B), unless there is some reason to excuse the appellant's failure to file a timely specific request for retroactive pension benefits, the BVA's decision that the disability pension is effective only as of the date of the appellant's claim is legally correct.

## III.

Both the appellant and the amicus argue, inter alia, that the VA's failure to notify the appellant that he needed to make a specific request for retroactive benefits within one year of becoming permanently and totally disabled excuses his failure to make a timely request for retroactive pension benefits. They assert that this failure to notify the appellant individually is a violation of the provision contained in § 7722(d) that the VA is to provide to veterans, "to the maximum extent possible, aid and assistance ... in the preparation and presentation of [their] claims." The Secretary of Veterans Affairs (Secretary), on the other hand, argues that § 7722(d) is merely a part of a general direction to the VA to develop large-scale veterans' outreach programs and thus does not create any specific duties owed to individual veterans.

One of the basic tenets of statutory interpretation is that when a reviewing court "find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances." *Demarest v. Manspeaker*, 498 U.S. 184, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991). *See also Ardestani v. I.N.S.*, —— U.S. ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (strong presumption that plain language of the statute expresses congressional intent is rebutted only in rare and exceptional circumstance). We find that the terms of § 7722(d) are indeed unambiguous. The relevant part of this section provides:

> The [VA] shall provide, to the maximum extent possible, aid and assistance (including personal interviews) to members of the Armed Forces, veterans and eligible dependents ... in the preparation and presentation of claims under the laws administered by the [VA].

Clearly, interviews and the preparation and presentation of claims before the VA must be done on an individual basis. Therefore, even though Congress' general intention in passing the legislation of which § 7722(d) is a part may have been the creation of large-scale outreach programs, the plain language of this subsection manifests an ex-

plicit congressional intent to create at least one duty owed by the VA to veterans as individuals. (This duty is not unlimited in scope, however, and requires of the VA only those actions which are reasonable under the circumstances involved, *see infra*.) *See United States v. James*, 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986) ("[I]n the absence of a clearly expressed legislative intention to the contrary, the language of a statute itself must ordinarily be regarded as conclusive.")

Moreover, this case does not present a "rare and exceptional circumstance" which would defeat the usual controlling nature of a statute's plain language. "Rare and exceptional circumstances" exist "where the application of the statute as written will produce a result 'demonstrably at odds with the intentions of its drafters.' " *Manspeaker*, 111 S.Ct. at 604 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1991)). Notably, "rare and exceptional circumstances" have been found by the Supreme Court *not* to exist in a case where the literal reading of the statute would provide for a potential $300,000 punitive award for the failure of an employer to pay a seaman $412.50 in wages, *Griffin*, 458 U.S. at 574, 577, 102 S.Ct. at 3253; nor in a case where the statute on its face required the permanent halting of a virtually completed dam, for which Congress had expended over $100 million, in order to ensure the survival of a "relatively small number of three-inch fish," *TVA v. Hill*, 437 U.S. 153, 172, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978) (also notable is that the Supreme Court made this ruling despite Congress repeatedly enacting appropriations of new funds to the dam project *after* the discovery of the potential danger to the fish). Therefore, in light of these Supreme Court precedents, we cannot say that enforcing a duty, created by the literal language of § 7722(d) and owed by the VA to individual potential VA claimants to help prepare and present their claims "to the maximum extent possible," is "so bizarre that Congress could not have intended it." *Manspeaker*, 111 S.Ct. at 604.

In order to determine whether the VA violated this duty, the phrase "maximum extent possible" must be read in terms of that action reasonably possible under the circumstances. While it is unnecessary to determine the precise scope of this language in every case, we hold that in this particular case, the VA failed to take reasonable action to fulfill its duty under § 7722(d).

■ The VA itself has recognized that potential claimants should be advised of the specific application requirements, since, according to the Secretary, the VA revised its basic pension application form (VA Form 21–526) in September 1984 to "include instructions for filing a claim for retroactive payment of pension." (Supp. Br. of Appellee, at 24–25.) The VA Form 21–527, which the appellant submitted to the VA on December 23, 1986, to commence his claim and which the VA accepted as an informal claim for pension, was also similarly revised in January 1987. (Appellee's Resp. to Bench Order App., at 1.) Moreover, since this revision shows that the VA has recognized since January 1987 that claimants filing a VA Form 21–527 should receive information regarding the specific filing requirement, and the VA had been made aware of the appellant's April 1986 hospitalization by his December 1986 application, it surely would have been reasonable for the VA to have timely informed the appellant of the one-year filing requirement. It is also likely, as evidenced by the appellant's quick responses to the VA letters of April 1987 and July 1987, that if the VA had given the appellant this information, he would have responded promptly.

From these facts, we believe it is inescapable that the Secretary's obligation to inform the appellant in a timely fashion of what he needed to know to make a retroactive application was part of the Secretary's obligation to provide "aid and assistance to him ... in the preparation and presentation of" his pension claim and was well within the "to the maximum extent possible" qualification of § 7722(d). Indeed, the Secretary has offered no argument that it was not reasonably possible for such assistance

to have been provided to this veteran in a timely manner. Accordingly, the VA had a statutory obligation, within the remaining three-and-one-half months of the one-year retroactive benefits application period, to give this claimant the information he needed in order to decide whether he wished to claim retroactive benefits.

Despite this obligation, and even though there remained three-and-one-half months after filing of the VA Form 21–527 for the appellant to make a timely request for retroactive pension benefits, there is no evidence that the VA made any effort to inform him of the one-year specific request requirement. In fact, the first time the VA informed the appellant of such a requirement was in its September 20, 1987, RO decision, which was issued subsequent to the expiration of the one-year period, and which ruled that the appellant was not entitled to retroactive pension benefits. Finally, although it would have been too late to serve as a timely notification by the VA, it is also not insignificant that when the VA did send the appellant a VA Form 21–526 in July 1987 it did not, even then, send him the updated form, which had been revised almost three years earlier, with the special advice about applying for retroactive benefits.

As indicated, what the exact limits are of the duty owed to individuals under § 7722(d) need not be defined by the Court at this time. For present purposes, it suffices to say that a review of the record in this appeal shows that the VA violated the duty in this case.

## IV.

Having determined that the VA has violated its duty toward the appellant, the Court must now determine the appropriate remedy. The Secretary argues that the recent Supreme Court decision in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), precludes payment of retroactive benefits in this case regardless of the violations of any rights of the appellant. The appellant responds that it is not *Richmond* that governs this appeal, but a subsequent

Supreme Court decision, *Irwin v. Veterans Admin.*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), and that under the standard for equitable tolling expressed in that opinion, the appellant is entitled to the retroactive pension benefits that he seeks.

*Richmond* involved a case where a former federal employee receiving a retirement pension relied on erroneous information provided by the Office of Personnel Management, and took an action which caused him to exceed certain statutory income limits and thus become ineligible to receive certain pension benefits. He subsequently sued, asserting that because of its erroneous advice the government should be equitably estopped from not paying him pension benefits. The Supreme Court held that payments of money from the United States Treasury are limited to those authorized by statute, and that, therefore, regardless of the equities involved, the pensioner could not be paid the benefits he sought because he had not met the statutory eligibility requirements for those benefits and there was no other statutory authority under which to pay him. *Richmond*, 110 S.Ct. at 2471–72, 2475.

The Secretary argues that the same situation exists in this appeal—the appellant, relying on a lack of correct advice from the government, failed to take an action required by statute in order to establish eligibility for the benefits that he sought. The Secretary therefore asserts that since the appellant has not met the statutory requirements for retroactive pension benefits, no equities, no matter how compelling, can create a right to a payment out of the United States Treasury which has not been provided for by Congress. The Secretary's argument, however, misses the crucial distinction between this case and *Richmond*. This case, unlike *Richmond*, does not involve a question of whether the government's actions caused the appellant to fail to satisfy the underlying statutory eligibility requirements for the benefits sought, but rather whether the government's actions resulted in the failure to file a timely request for these benefits. Therefore, the issue in this case is whether the govern-

ment's actions warrant an equitable tolling of the statutory time period for filing a claim against the United States Government and not whether the government is equitably estopped because of its misconduct from refusing to make payments which are not authorized by law. As a result, it is *Irwin,* and not *Richmond,* which controls this case.

*Irwin* involved the failure of a plaintiff to file suit against the United States within the time limit imposed by section 717(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c) (1988), for a suit to obtain damages arising from an alleged civil rights violation. The district court and reviewing court of appeals had accepted the government's argument that the statutory time requirement created an *absolute* bar against untimely suits, and thus ordered the suit dismissed. The Supreme Court, however, rejected the government's argument and instead held that the time-period requirement was subject to the common law doctrine of equitable tolling. *Irwin,* 111 S.Ct. at 457. The Court reasoned that once Congress had made a waiver of sovereign immunity as it had done in the Civil Rights Act, the application of the equitable tolling rule to the government,

> in the same way that it is applicable to private suits, amounts to little, if any, broadening of the Congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation.

*Irwin,* 111 S.Ct. at 457. The Court apparently saw no conflict with *Richmond,* decided only six months earlier, for it never cited *Richmond* even though both cases relied on settled principles of sovereign immunity.

The similarity between this case and *Irwin* is readily apparent, as both cases involve the failure to file claims against the United States Government within the applicable statutory time period. Moreover, the recent Federal Circuit Court of Appeals decision in *Butler v. Derwinski,* 960 F.2d 139 (Fed.Cir.1992), is inapplicable to this case, since it dealt only with the Court's

jurisdiction over a case appealed to it. It is beyond doubt that the Court has jurisdiction over this appeal. We therefore hold that *Irwin's* rationale controls this case, and that the doctrine of equitable tolling should be applied to the facts of the instant case.

## V.

The Court must now apply the equitable tolling doctrine to the facts of this case. This Court has previously noted that the doctrine of equitable tolling is to be granted "only in extraordinary and carefully circumscribed instances." *Elsevier v. Derwinski,* 1 Vet.App. 150, 154 (1991) (quoting *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988)). We have also noted that one such extraordinary and carefully circumscribed instance is "where 'despite all due diligence [the appellant] is unable to obtain vital information bearing on the existence of his claim.'" *Elsevier,* 1 Vet.App. at 154 (quoting *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990)). *See generally Seattle Audubon Society v. Robertson,* 931 F.2d 590, 596, 599 (9th Cir.1991) (applying *Irwin,* court of appeals held that statutory time limit for filing claim was equitably tolled on the grounds that "external forces, rather than plaintiff's lack of diligence, accounted for failure to file timely claim"); *Johnsen v. United States,* 758 F.Supp. 834 (E.D.N.Y.1991) (applying *Irwin,* district court held that statutory time limit for filing claim for tax refund was equitably tolled due to the taxpayers' mental incapacity).

We hold that equitable tolling applies in this case. The appellant filed his VA Form 21–527 on December 23, 1986, nearly four months before the expiration of the one-year time period in which to make a specific request for retroactive pension benefits. If the VA had abided by its duty under § 7722(d) and made the appellant aware of the specific request requirement for retroactive pension benefits—either by sending him the updated VA Form 21–527, or in a timely subsequent communication after the VA had received his "informal application" for pension benefits on the VA Form 21–

527—there is every reason to conclude from the appellant's pattern of communication with the VA that he would have made the specific request well within the one-year time period. Thus, this case does not involve a "garden variety claim of excusable neglect," *Irwin*, 111 S.Ct. at 458, because, in light of § 7722(d), the appellant did all he was required to do in order to obtain the relevant information regarding the benefits that he sought. Nor is the appellant's failure to make a timely filing based merely on ignorance of the law, *see School District of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir.1981) ("ignorance of the law is not enough to invoke equitable tolling"), as this "ignorance" is precisely what the VA's duty under § 7722(d) is meant to address when it is triggered by circumstances such as those present here. Rather, we find that the appellant's failure to make a specific request for retroactive pension benefits within one year of becoming permanently and totally disabled resulted from his inability, as a consequence of the VA's violation of its duty owed to him under § 7722(d), "to obtain vital information" regarding his claim. *Elsevier*, 1 Vet. App. at 154. As such, we hold that the one-year filing requirement of § 5110(b)(3)(A) is equitably tolled.

### VI.

■ Having found that the one-year filing requirement of subparagraph (A) of § 5110(b)(3) was equitably tolled, the remaining task for the Court is to determine whether the BVA's finding of fact that, pursuant to subparagraph (B) of § 5110(b)(3), the appellant was not precluded from filing a claim for pension benefits for at least 30 days from the time he became permanently and totally disabled is clearly erroneous. Unfortunately for the appellant, however, this factual finding has a plausible basis in the record before the Court, and thus cannot be overturned as clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990) (factual findings of the BVA are clearly erroneous only when there is no plausible basis for them in the record). The evidence of record shows that the appellant was hospi-

talized for 28 days, during which time it is fair to assume that he was incapable of filing a claim with the VA. *See* 38 C.F.R. § 3.400(b)(1)(ii)(B) (1991) ("extensive hospitalization will generally qualify as sufficiently incapacitating to have prevented the filing of a claim"). However, despite the appellant's still rather serious condition after his discharge from the hospital, a conclusion that he was able to file a claim with the VA during the two-day period after his discharge would not be "implausible" in light of the record on appeal. Therefore, since the BVA's finding that the appellant was not precluded by his medical condition from filing a claim for a full 30–day period from the beginning of his illness has a plausible basis in the record on appeal, the Court cannot overturn that finding. Moreover, since this 30–day preclusion is a prerequisite for retroactive pension benefits, the Court also cannot overturn the BVA decision denying the appellant's claim for them. Therefore, the decision of the BVA is AFFIRMED.

HOLDAWAY, Associate Judge, concurring:

I concur in the result but disassociate myself from those portions of the opinion which discuss duty to assist and equitable tolling.