Charlotte H. CONARY, Appellant,

and

Betty D. Coxey, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

Nos. 90–1571, 91–473.

United States Court of Veterans Appeals.

Aug. 14, 1992.

Before MANKIN, HOLDAWAY, and STEINBERG, Associate Judges.

ORDER

PER CURIAM.

These cases were consolidated by order of the Court dated April 14, 1992. Oral argument was heard on June 26, 1992. At oral argument, counsel for the parties each expressed the view that a remand for readjudication would be appropriate, although neither party had so moved. On June 18, 1992, the Secretary of Veterans Affairs (Secretary) submitted a motion for leave to file a response to appellants' reply brief (filed on June 15, 1992) and lodged a response. On June 22, 1992, appellants filed an opposition to the Secretary's motion. On July 20 and 27, 1992, respectively, the Secretary and the appellants filed supplemental memoranda pursuant to an order of the Court at oral argument on June 26, 1992.

On consideration of the foregoing and the Court's May 22, 1991, order of remand in *Arnett v. Derwinski*, 1 Vet.App. 388 (1991), it is

ORDERED that the decisions of the Board of Veterans' Appeals (of September 25, 1990, in *Conary* and of November 27, 1990, in *Coxey*) are vacated and remanded to the Board for full readjudication, in light thereof, with the right of appellants to submit further argument and evidence. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). It is further

ORDERED that the Secretary's motion for leave to file a response is granted and the response will be filed as of the date of this order.

STEINBERG, Associate Judge, concurring, issued the following statement: I write to provide some background and context for the Court's action in remanding the case.

I. BACKGROUND

Both Mr. Conary and Mr. Coxey, veterans who served during World War II, received needs-based non-service-connected pension from the Veterans' Administration (now Department of Veterans Affairs) (VA) for several years (approximately eight

years and twelve years, respectively) before their deaths. During the four years prior to his death, in 1990, Mr. Conary accrued unreimbursed medical expenses between $2,273 and $4,415, annually, and he submitted annually an Improved Pension Eligibility Verification Report (EVR) in order to receive an upward adjustment in his pension. During the three years prior to his death, in 1989, Mr. Coxey accrued unreimbursed medical expenses between $3,474 and $4,053, annually, and he, too, submitted EVRs for each of those years in order to receive an upward adjustment in his pension. The records on appeal do not contain EVRs for the years preceding those discussed above.

Entitled "Pension for Non–Service–Connected Disability or Death or For Service", chapter 15 of title 38 of the United States Code sets forth the factors governing VA's determination of the needs-based pensions that the deceased veterans in these cases had received. Under 38 U.S.C. § 1521 (formerly § 521), veterans who have served on active duty during a period of war, as defined in the statute, and who are disabled in the various ways described in the provision are entitled to receive a VA pension, to be adjusted according to the amount of the veteran's annual income. Under 38 U.S.C. § 1503(a)(8) (formerly § 503), annual income for purposes of pension calculation under chapter 15 includes payments of any kind and from any source except, inter alia, the amount equivalent to payments for unreimbursed medical expenses to the extent that they exceed five percent of the maximum annual rate of pension. See 38 C.F.R. § 3.272(g) (1991). The submission of the EVR, thus, is designed to ensure that annual unreimbursed medical expenses will be deducted from annual income in the calculation of veterans' pensions.

If a VA pension recipient submits an EVR each year within an annual reporting period established by VA, certain unreimbursed medical expenses may be excluded from the annual income reported by the recipient and used by VA to calculate or adjust the amount of pension received. Consequently, a veteran's submission of an EVR may result in a retroactive upward adjustment of pension for the prior year. See 38 U.S.C. §§ 1503(a)(8), 1521; 38 C.F.R. § 3.272(g)(1) (1991). Mr. Conary's annual EVR reporting period spanned March 1 through February 28 of each year. He died on February 24, 1990, four days prior to the end of his annual EVR reporting period. Mr. Coxey's annual reporting period spanned September 1 through August 31 of each year. He died on June 8, 1989, less than three months before his annual EVR reporting period expired.

Shortly after their veteran husbands' deaths, each appellant filed an application for "accrued benefits" (explained below) to receive upward adjustments in the veterans' pensions, for the year preceding death, based on the unreimbursed medical expenses for that year as reflected on the EVR each had submitted before the respective deadlines for annual filing of those forms but after the veterans' deaths. VA denied each surviving spouse's application. The Board of Veterans' Appeals (BVA or Board) concluded in each case that, although a "regrettable" result, the appeal could not be granted because the practice of reporting unreimbursed medical expenses at the end of the annual reporting period was not sufficient to trigger entitlement to accrued benefits after the veteran's death; the right to accrued benefits could be secured only by "existing ratings or decisions" at the date of the veteran's death, or by "evidence in the file at [the] date of death", and, because the EVRs had not been submitted by the date of death in either case, the Board concluded that neither alternative requirement was met. 38 U.S.C. § 5121(a); Jimmie L. Coxey, BVA 90–___, slip op. at 4–5 (Nov. 27, 1990); Everett M. Conary, BVA 90–___, slip op. at 4 (Sept. 25, 1990).

## II.  ANALYSIS

### A.

If a veteran, who receives VA pension and who typically submits an EVR at the close of each annual reporting period, expecting that the pension amount will be

adjusted to compensate for unreimbursed medical expenses, dies before submitting the EVR covering the annual reporting period immediately preceding death, the surviving spouse, under the interpretation of the applicable statutory provision by the Secretary of Veterans Affairs (Secretary), may not be able to recover as accrued benefits the full amount of unreimbursed medical expenses for the year preceding death. The applicable statutory provision regarding accrued benefits, 38 U.S.C. § 5121(a) (formerly § 3021), provides, in pertinent part, that accrued benefits shall be paid upon a veteran's death only if that individual was either (1) "entitled [to the periodic monetary benefits] at death under existing ratings or decisions", or (2) there existed "evidence in the file at [the] date of death ... [of periodic monetary benefits] due and unpaid for a period not to exceed one year". The Secretary has argued that the plain meaning of the language in section 5121(a) precludes the appellants here from recovering the full amount of accrued benefits because the veterans, by the dates of their deaths, had not submitted their EVRs, and, thus, in each case no existing rating or decision or evidence was in the file at the date of death from which an award of accrued benefits could be determined.[1]

The appellants have argued, and the BVA's decisions in *Arnett* (the December 7, 1989, initial decision and the December 18, 1991, supplemental decision (appended to appellants' reply brief in this case) on a remand ordered by the Court) demonstrate that the BVA has previously interpreted

section 1521(a) in a way that would have afforded at least partial relief to the appellants here. *See Warren G. Arnett,* BVA 91-____ (Dec. 18, 1991); *Warren G. Arnett,* BVA 89-____ (Dec. 7, 1989). In *Arnett,* the BVA interpreted the statute's requirement that there be "evidence in the file at [the] date of death" to be satisfied where a surviving spouse was able to establish that the EVR submitted after death reflected unreimbursed medical expenses that were reasonably estimable because previously submitted EVRs showed them to be recurring and, therefore, predictable. These types of expenses, concluded the Board in *Arnett,* constitute prima facie annual-income evidence on file at the date of death. Consequently, the claimant there was awarded accrued benefits in connection with private medical insurance and Medicare premium payments made during the previous year.

### B.

The task of the Court in interpreting the statutory provisions at issue—subsections 5121(a) and (c)—is "to give effect to the will of Congress, and where that will has been expressed in reasonably plain terms, 'that language must ordinarily be regarded as conclusive'". *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). "In rare cases [, however,] the literal application of a statute will produce a result demonstra-

---

1. The Secretary's representatives have argued in their brief and at oral argument (although they did retreat, somewhat, when pressed) that the appellants are not entitled to receive as accrued benefits any portion of their unreimbursed medical expenses. They have also argued that this result is consistent with long-standing agency interpretation of the applicable statutory provision. However, the appellants were the first party to call to the Court's attention that in *William G. Arnett,* BVA 91-____ (Dec. 18, 1991), and *William G. Arnett,* BVA 89-____ (Dec. 7, 1989), the BVA had awarded partial relief to an appellant with a claim nearly identical to the appellants' claims, and that the Secretary had proposed a remand on that basis for only one of the appellants here (Mrs. Coxey, before the

cases were consolidated). Since the *Arnett* case contradicts the argument that the Department has consistently interpreted 38 U.S.C. § 5121(a), the appellant argues persuasively in his July 27, 1992, supplemental memorandum that the Secretary's representatives had an obligation to call the BVA's decisions in *Arnett* to the Court's attention. *See Jones (Joseph L.) v. Derwinski,* 1 Vet.App. 596, 605–07 (1991) ("[T]he Court must be able to rely upon the representations of those who practice before it and there is an inherent professional obligation to correct misstatements." (1 Vet.App. at 606); the Court held that judicial process had been abused and sanctions were warranted where representatives of the Secretary failed to correct a statement which they learned was false).

bly at odds with the intentions of its drafters, and those intentions must be controlling." *Ibid.* This " 'absurd result' exception to the plain meaning rule is, however, narrow and limited to situations 'where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear as to be obvious to most anyone' ". *Gardner v. Derwinski,* 1 Vet.App. 584, 587 (1991) (quoting *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 471, 109 S.Ct. 2558, 2575, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring)).

"[I]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988). Here, with respect to subsection 5121(a), the appellants could receive accrued benefits only if the veterans were "entitled at death" to periodic monetary benefits under "existing ratings or decisions" or there existed "evidence in the file at [the] date of death ... [regarding periodic monetary benefits] due and unpaid". The terms "ratings", "decisions", and "evidence" are not explicitly defined in chapter 51 of the statute. However, the intended meanings of "ratings" and "decisions" may be gleaned from reading the statute as a whole and harmonizing its parts into a coherent mandate. "It [is] fundamental that a section of a statute should not be read in isolation from the context of the whole act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.' " *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962) (citations omitted).

It is reasonably clear from the statute as a whole that, with regard to all of the benefits sought by the appellants, there were no ratings or decisions in the veterans' files at their deaths upon which VA could determine with precision the benefits owed. The term "ratings", although not explicitly defined in chapter 51, is used elsewhere in the statute to refer to the "average impairments of earning capacity" resulting from diseases and injuries encountered as a result of or incident to military service. 38 U.S.C. § 1155 (formerly § 355); *see* 38 C.F.R. § 4.1 (1991) (percentage ratings represent, as far as can practicably be determined, average impairment in earning capacity resulting from diseases and injuries resulting from or incident to military service). Thus, a "rating" could not have entitled appellants here to accrued benefits for the unreimbursed medical expenses since the degree of the veterans' disabilities was not at issue.

In addition, the term "decisions", although not explicitly defined in chapter 51, is elsewhere discussed in the statute as the resolution of "all questions of law and fact ... that affect[ ] the provision of benefits". 38 U.S.C. § 511(a) (replaced § 211). Thus, a "decision" as to the adjustment in pension sought by the appellants was not in the veterans' files upon their deaths, since questions of fact regarding the amount owed by VA for unreimbursed medical expenses remained, and their resolution depended on the information supplied on the EVRs that were submitted after the veterans' deaths.

The requirement that there be "evidence in the file at [the] date of death" is also not explicitly defined in title 38; nor is its meaning implied elsewhere in the statute. "Where, as here, the statute contains no definition of the words 'in controversy' ... the ... popular or received import of words furnishes the general rule for interpretation of public laws." *Mercantile Bank & Trust Co. v. United States,* 441 F.2d 364, 366 (8th Cir.1971) (citations omitted). Since "evidence" is used throughout the statute without mention of any specialized definition, it would be reasonable to ascribe to it a common definition, such as that set forth in Black's Law Dictionary:

Any species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, exhibits, concrete

objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention.... Testimony, writings, or material objects offered in proof of an alleged fact or proposition.... Testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact.... All the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved.

BLACK'S LAW DICTIONARY 555 (6th ed. 1990); *see Richards*, 369 U.S. at 9, 82 S.Ct. at 590 (in interpreting meaning of word "place" in Federal Tort Claims Act, Court first "assum[ed] that the legislative purpose is expressed by the ordinary meaning of the words used"). Under such an approach, any information in a veteran's file upon his or her death, which persuades VA that it has in its possession facts sufficient to determine the amount of accrued benefits owing, could reasonably be considered "evidence in the file at [the] date of death".

The Board's interpretation of this provision in *Arnett*, a decision not, of course, before the Court in these appeals,[2] was not facially inconsistent, on the facts presented there, with the ordinary meaning of "evidence in the file at [the] date of death", since there the Board looked at the proof before it—the EVRs submitted prior to death—and was able to deduce certain facts from that proof.[3] Even so, section 5121(a), whether interpreted to preclude an award of accrued benefits where an EVR has been submitted after the veteran's death, or to allow accrued benefits only for those expenses that were reasonably estim-

able and recurring, as deduced from EVRs in a veteran's file at the date of death, may very well not provide complete relief for claimants in the position of these appellants (for example, if VA were to conclude, upon readjudication, as the BVA did in *Arnett*, that certain expenses listed were not reasonably estimable and recurring).

Nevertheless, it seems dubious that, in light of the absence of a clearly expressed contrary legislative intent, the interpretation urged by the appellants could fairly be ascribed to the words chosen by Congress in section 5121(a). *See Public Citizen*, 491 U.S. at 454, 109 S.Ct. at 2566; *Griffin*, 458 U.S. at 571, 102 S.Ct. at 3250. In addition, the interpretation taken by the BVA in *Arnett* would be likely to be sustained, in the words of the Supreme Court, "given the importance we have consistently attached to interpreting statutes to avoid deciding difficult constitutional questions where the text fairly admits of a less problematic construction." *Public Citizen*, 491 U.S. at 455, 109 S.Ct. at 2567.

## C.

The appellants have also argued that subsection (c) of section 5121 should be interpreted to provide them relief. The design of section 5121 as a whole and its legislative history negate the validity of such an interpretation. That provision requires, inter alia, that applications for accrued benefits be filed within one year after the date of the veteran's death. 38 U.S.C. § 5121(c). The appellants have argued that that requirement is the only one

---

**2.** Prior decisions of the BVA are not considered precedential by this Court. *See Hillyard v. Derwinski*, 1 Vet.App. 349, 351 (1991); 38 C.F.R. § 19.197 (1991) (reformulated in 57 Fed.Reg. 4,127 (1992) (to be codified at 38 C.F.R. § 20.-1303)). Normally, the Court would not, therefore, take cognizance of a prior BVA decision. Here, however, the Secretary had offered appellant Coxey a remand to the Board for readjudication in light of the Board's prior decision in *Arnett*, and all parties agreed that the facts of *Arnett* were basically indistinguishable from the facts in the instant appeals.

**3.** *See Warren G. Arnett*, BVA 89-____, at 5 ("in the case of a running award of improved dis-

ability pension, prima facie evidence of the payment of such expenses may be confirmed after death by the submission of additional evidence"; "[w]hen prima facie evidence of annual income was submitted before death, additional confirmatory or explanatory income evidence submitted after death may be accepted"); *Warren G. Arnett*, BVA 91-____, at 4 ("[p]rima facie proof" of expenses for private health insurance and Medicare premiums for income reporting period prior to veteran's death was "of record at the date of death" and confirmatory information regarding such recurring expenses was accepted after death in support of claim for accrued benefits).

they must have fulfilled in order to receive accrued benefits. Their argument, however, ignores the structure of section 5121. Subsections (a), (b), and (c) do not present requirements in the alternative; they are independent requirements, each of which must be fulfilled, to the extent applicable to a particular claimant, before accrued benefits may be paid.

The legislative history of section 5121 supports this interpretation of its structure. In Executive Order 6230 of July 28, 1933, the current subsection (c) was then encompassed in paragraph (1)(f), and paragraph (1) was equivalent to the current subsection (a) of section 5121. Paragraph (1) stated that, upon meeting the "existing ratings or decisions" or "evidence in the file" requirements, a claimant had to meet a list of additional requirements, which were listed following a colon. Among the additional requirements was subparagraph (f) which stated: "Payment of benefits authorized by this paragraph will not be made unless claim therefor be received in the Veterans' Administration within one year from the date of death". The placement of subparagraph (f) within paragraph (1) and the language employed in subparagraph (f) demonstrate that the Executive intended that the fulfillment of the application filing requirement alone would not be sufficient to trigger entitlement to accrued benefits.

That Executive Order supplied the text for Vet.Reg. No. 2(a) which was codified in 1943 during the 78th Congress. *See* 57 Stat. 577 (July 13, 1943). Although today subsection (c) of section 5121 is no longer part of subsection (a), there is no legislative history to suggest that the intention of Congress has changed or that fulfillment of the timely filing requirement alone would trigger entitlement to accrued benefits in the absence of satisfaction of the requirements in subsection (a). The structure of the statute and the legislative history do not, therefore, support the appellants' interpretation.

### D.

The Court has made the only equitable and fair disposition of these appeals. How-ever, several aspects of the cases bear further illumination and clarification. The first is the inequity resulting from the Secretary's interpretation of section 5121(a). Under the interpretation of the accrued benefits statute put forward by the Secretary in these cases, veteran pension recipients and their survivors are placed in an impossible "Catch–22" position if 38 U.S.C. § 5121(a) does, indeed, require that, in order for the surviving spouses in such cases to be entitled to an accrued pension benefit unpaid to their husbands at the time of their deaths and consisting of the full amount of unreimbursed medical expenses for the preceding year, the husbands would have had to have filed (or had filed for them) prior to death specific evidence of medical bills or expenses (such as insurance premiums) paid prior to death or an "estimate based on a clear and reasonable expectation that unusual medical expenditure will be realized". 38 C.F.R. § 2.272(g). Veterans in such circumstances would have to anticipate that their deaths would occur at a precise point in time in order to comply fully with the statute as to all of their unreimbursed medical expenses.

The Secretary's regulations, instructions, and forms, nowhere specifically advise a veteran pension recipient of any such onerous requirement. If so advised, a veteran could choose to file evidence of payment for unreimbursed medical expenses as they are incurred and, for each year, an advance estimate for anticipated "unusual medical expenditure". Of course, to expect a veteran or a spouse to have the foresight to take such a step in order to create entitlement to an accrued benefit for the surviving spouse for the full amount of unreimbursed medical expenses, should the veteran die before the filing of the annual EVR, is to expect a great deal of a family in the throes of a devastating illness or injury. In addition, the claimant who knows of the impending death of his or her veteran spouse is still forced to choose between spending time with the veteran during his or her last days or taking care to pay all bills and file numerous EVRs to ensure their submission prior to the veteran's death.

Nevertheless, veterans submitting EVRs should be specifically advised by VA about the requirements of the law as interpreted by the Secretary, in the same way as the current EVR Form 21–0516 provides information to the pension recipient, as follows, regarding the annual due date for submission of the EVR: "IF YOU DO NOT RETURN THE COMPLETED FORM TO THE VA BY NOV. 1, 1987 YOUR BENEFITS WILL BE DISCONTINUED." *Conary,* R. at 20, 22, 25; *but see Coxey,* R. at 21. At least with such notice, veteran pension recipients may try to ensure that, despite the cruel "Catch 22" created by the statute, their surviving spouses receive (through their accrued benefits) some upward pension adjustment for unreimbursed medical expenses. The Secretary did not provide such notice here and apparently does not do so as a general matter. The seemingly anomalous and inequitable nature of the results that may arise under the statute does not negate the Secretary's obligation to provide notice of the onerous requirements of the accrued benefits provisions of section 5121.

Thus, the second aspect of these cases worth illuminating is the failure of the Secretary to carry out the individualized duty here to provide "aid and assistance" to the two veteran husbands of the appellants "in the preparation and presentation of [their] claims" during their time as recipients of pension from VA. 38 U.S.C. § 7722(d) (replaced § 241(3)). Just as in *Smith (Edward F.) v. Derwinski,* 2 Vet. App. 429, 432–33 (1992), where the Secretary had a statutory obligation, under section 7722(d), during the one-year retroactive pension application period under 38 U.S.C. § 5110(b)(3)(B) (formerly § 3010(b)(3)(B)), to advise a pension applicant of the one-year period in which to make specific application for retroactive pension, so here the Secretary was statutorily obliged to give the veterans "the information [they] needed" in order to make timely and effective application for an upward adjustment of pension based on unreimbursed medical expenses under 38 U.S.C. § 1503(a)(8) (*see* 38 U.S.C. § 5121(a); 38 C.F.R. § 3.272(g) (1991); *Smith,* 2 Vet.

App. at 432) in the event that the veteran were to expire prior to the date on which the annual EVR was due.

However, this case's similarity to the *Smith* case stops with the imposition of the obligation imposed by 38 U.S.C. § 7722(d). In *Smith,* the Court held that the appropriate remedy for the Secretary's violation of his duty toward the appellant was equitable tolling (suspension) of the running of the one-year limitation period for the pension applicant to make specific application for retroactive pension. *Smith,* 2 Vet.App. at 434. Here, the statutory requirement in 38 U.S.C. § 5121(a), with respect to "evidence in the file at [the] date of death", is not a "statutory time period for filing a claim against the U.S. Government", such as is the case with section 5121(c), which requires that application for accrued benefits "must be filed within one year after the date of death"; rather, the subsection (a) temporal requirement here is part and parcel of "the underlying statutory eligibility requirements for the benefits sought", payment of which has not been provided for by law unless that basic requirement is met. *Smith,* 2 Vet.App. at 433. In this latter situation, as recognized in *Smith,* "no equities, no matter how compelling, can create a right to payment out of the United States Treasury which has not been provided for by Congress." *Smith, supra* (citing *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *cf. Irwin v. Veterans Admin.,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

Third, the appellants have essentially argued that if the Court were to find that, in order to receive as accrued benefits the full amount of allowable unreimbursed medical expenses, the appellants or the veterans should have submitted prior to the veterans' deaths the EVRs listing those expenses, such an application of section 5121(a) has deprived them of the Constitutional guarantees of the due process and equal protection clauses. In light of the Court's remand disposition, it has not reached the Constitutional questions. Moreover, if the statutory requirement that there be evidence in the file at the date of death may fairly be interpreted so that

"evidence" is given a broad construction, the Constitutional issues pressed by the appellants may well be similarly avoided. Where statutory construction, which preserves the validity of the statutory provision in question, is "fairly possible", the Supreme Court has avoided overturning such statutes on constitutional grounds, "even if a serious doubt of constitutionality is raised". *Public Citizen*, 491 U.S. at 465–66, 109 S.Ct. at 2572 (quoting *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932)).

Consequently, in light of the Court's inability to provide the appellants a remedy by striking the relevant statutory provision or by imposing an equitable remedy for the Secretary's violation of his section 7722(d) duty to their deceased husbands, and thus ensure that the appellants and others similarly situated receive the full amount of their unreimbursed medical expenses for the year prior to the veterans' deaths, Congress may wish to consider whether it intended to create the seemingly anomalous, inequitable, and harsh result which the Secretary's construction of section 5121(a) may require; or, whether, as the appellants have contended here, they should each be afforded a fixed period (here section 5121(c)'s one-year, post-death provision would seem instructive) from their husbands' deaths to file the medical expense information necessary to secure their rights to accrued benefits through an adjustment of those benefits to reflect the unreimbursed medical expenses incurred and paid prior to the veterans' deaths. Correction of the potential for unintended, almost inhumane results in such cases, under the Secretary's construction of the applicable statutory provisions in these appeals, is the province, as the Court said in another context recently, not of the Court but of "possible future legislative action". *Jones v. Derwinski*, 2 Vet.App. 231, 233 (1992) (en banc).

