# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-336

HELEN BARELA, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 21, 2008               Decided    June 24, 2008  )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Lavinia A. Derr*, with whom *Paul J. Hutter*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *David L. Quinn*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and LANCE and DAVIS, *Judges*.

GREENE, *Chief Judge*:   Mrs. Helen Barela, widow of veteran Jose L. Barela, appeals, through counsel, an October 18, 2005, Board of Veterans' Appeals (Board) decision that denied her claims for VA service connection for the cause of her husband's death, accrued benefits, dependency and indemnity compensation (DIC), and service-connected burial benefits.  Record (R.) at 1-19. Mrs. Barela argues that the Board should have applied the provisions of 38 U.S.C. § 1311(a)(2) as a basis for her DIC benefits.  Mrs. Barela has not raised any arguments pertaining to the service-connection, accrued benefits, or burial benefits claims, and as such, any issues regarding those determinations are deemed abandoned.  *See Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997). Because there is no independent legal basis to authorize initial DIC compensation benefits under section 1311(a)(2), an enhancement of benefits statute, the Board decision will be affirmed.

## I. BACKGROUND

At the time of Mr. Barela's death, in January 2000 (R. at 1359), he was receiving compensation benefits for his VA service-connected post-traumatic stress disorder and shell fragment wound residuals at a combined disability rating of 100%, effective May 29, 1991. R. at 1354-57. In May 2000, Mrs. Barela filed with VA, through her current counsel, a claim for, inter alia, DIC benefits, arguing that the cause of her husband's death was service connected. R. at 1368-72, 1401-04. In February 2003, a VA regional office (RO) determined that Mr. Barela's death was not service connected and that therefore Mrs. Barela was not entitled to DIC under 38 U.S.C. § 1310. R. at 1491-94. The RO also denied her DIC claim under 38 U.S.C. § 1318 on the basis that Mr. Barela had not been service connected with a total disability rating for a period of 10 years or more immediately preceding death. Mrs. Barela disagreed with the RO decisions and asserted that she should be granted DIC benefits under 38 U.S.C. § 1311(a)(2). R. at 1498-99. In June 2003, the RO issued a Statement of the Case regarding Mrs. Barela's eligibility for DIC. R. at 1508-21. Concerning section 1311, the RO determined that the statute "merely provides a basis for determining the rate of DIC benefits paid to a beneficiary already found to be entitled to DIC benefits, by meeting the eligibility criteria under other sections such as [38 U.S.C. §] 1310 or 1318." R. at 1521. Mrs. Barela appealed. R. at 1523-27. In May 2005, the Board also denied Mrs. Barela's claim after concluding that she was not eligible under section 1310 or 1318 for DIC benefits. R. at 1-19. The Board also determined that section 1311 provided for "enhanced DIC benefits," and found that Mr. Barela's receipt of benefits at a 100% disability rating did not entitle Mrs. Barela to DIC under section 1318. R. at 16-17. This appeal followed.

## II. LAW AND ANALYSIS

The question before the Court is whether the Board was correct in not awarding DIC benefits under section 1311(a)(2) to a veteran's qualified survivor who had not first qualified for DIC benefits under section 1310 or 1318. The Court's inquiry into the proper interpretation of section 1311(a)(2) is a question of law, and the Court reviews the Board's interpretation of the law de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc); *see also Hensley v. West*, 212 F.3d 1255, 1262-64 (Fed. Cir. 2000) (discussing proper application of de novo review).

"'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.'" *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. MSPB*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)). "In evaluating whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure of the statute itself." *Sursely v. Peake*, 22 Vet.App. 21, 24 (2007) (citing *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984))). "'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (alteration in original) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992)); *see Sweitzer v. Brown*, 5 Vet.App. 503, 505 (1993); *see also Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd,* 513 U.S. 115 (1994); *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996) ("[I]f 'the plain meaning of a statute is discernible, that plain meaning must be given effect.'" (quoting *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995))); *Smith v. Derwinski*, 2 Vet.App. 429, 431 (1992) ("[W]hen a reviewing court 'find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.'" (second alteration in original) (quoting *Demarest v. Manspeaker*, 498 U.S. 184 (1991))).

Pursuant to 38 U.S.C. § 1310, DIC benefits are paid to a surviving spouse of a qualifying veteran who died from a service-connected disability. *See Dyment v. West*, 13 Vet.App. 141, 144 (1999), *aff'd sub nom. Dyment v. Principi*, 287 F.3d 1377 (Fed. Cir. 2002); *Hanna v. Brown*, 6 Vet.App. 507, 510 (1994). Section 1318 provides for the payment of DIC benefits to the survivor of a veteran whose death was not caused by a service-connected disability only if the veteran was in receipt of, or was entitled to receive, disability compensation at the time of death for a service-connected disability that had been continuously rated totally disabling for a period of 10 years or more immediately preceding death. *See* 38 U.S.C. § 1318(b)(1); 38 C.F.R. § 3.22(a)(2)(i) (2007). Section 1311 provides, in pertinent part:

> (a) (1) Dependency and indemnity compensation shall be paid to a surviving spouse at the monthly rate of $1,067.

(2) The rate under paragraph (1) *shall be increased* by $228 in the case of the death of a veteran who at the time of death was in receipt of or was entitled to receive (or but for the receipt of retired pay or retirement pay was entitled to receive) compensation for a service-connected disability that was rated totally disabling for a continuous period of at least eight years immediately preceding death. In determining the period of a veteran's disability for purposes of the preceding sentence, only periods in which the veteran was married to the surviving spouse shall be considered.

38 U.S.C. § 1311(a) (emphasis added). Thus, contrary to Mrs. Barela's assertions, the text and structure of the statute identify section 1311(a)(2) as an additional benefit for those who have already qualified for DIC benefits under either section 1310 or 1318. *See Friedlund v. Nicholson,* 21 Vet.App. 380, 383-84 (2007) ("Section 1311, title 38, U.S. Code provides, in relevant part, that, *where a veteran's surviving dependent has been awarded DIC benefits pursuant to 38 U.S.C. § 1310,* a claimant may be entitled to DIC at an increased rate of payment (enhanced DIC) . . . ." (emphasis added)); *Gardner*, *Johnson*, and *Smith*, all *supra*.

Section 1311(a)(2) is analogous to obtaining an increase in one's disability rating. It is well settled that, to receive an *increase* in compensation, one must have already established entitlement to the benefit. *See Vazquez-Flores v. Peake*, 22 Vet.App. 37, 43 (2008) ("[A]n increased-compensation claim centers primarily on evaluating the worsening of a disability that is already service connected."); *see also Francisco v. Brown*, 7 Vet.App. 55, 58 (1994) (in increased-rating claim entitlement to compensation has already been established). Thus, the phrase "shall be increased" found in section 1311(a)(2) contemplates that a claimant must have qualified for benefits under section 1311(a)(1). Additionally, it is evident, from the straightforward language in the statutes and the statutory scheme as a whole, that sections 1310 and 1318 provide the criteria for obtaining DIC benefits and the actual amount of those benefits is provided under section 1311(a)(1). *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

"The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' when a contrary legislative intent is clearly expressed." *Ardestani v. INS*, 502 U.S. 129, 135-36 (1991) (citation omitted) (citing *INS v. Cardoza-*

*Fonseca*, 480 U.S. 421, 432 n.12 (1987); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "[A]mbiguities in the legislative history are insufficient to undercut the ordinary understanding of the statutory language . . . ." *Ardestani*, 502 U.S. at 137.

Mrs. Barela provides no authority for her assertion that the increase authorized in section 1311(a)(2) is a basis for an initial award of DIC benefits independent of section 1310 or 1318. Her counsel's vague assertions of support in the legislative history of the DIC statutes are not convincing. There is no expressed or implied legislative intent contrary to the plain meaning of the statute. Indeed, a review of the legislative history of the Veterans' Benefits Act of 1992, Pub.L. No. 102-568 § 102(a)(2), 106 Stat. 4320, 4321-22 (codified at 38 U.S.C. § 1311(a)(2)), expressly contradicts her assertion. The joint explanatory statement that accompanied the act stated that the section creating the section 1311 entitlement "would provide . . . a basic monthly DIC rate. . . plus an additional amount of compensation for survivors of veterans rated totally disabled while married to the surviving spouse, including a rating based on individual unemployability. The add-on would be . . . for veterans so rated for a continuous period of at least [eight] years immediately preceding the veteran's death." 138 CONG. REC. 3690 (1992). Moreover, regarding the increase, the House Report on the proposed bill that led to the Veterans' Benefits Act of 1992 explicitly states:

> The Committee wishes to note that it does not intend this rate revision to act as a liberalization for basic eligibility for DIC or for benefits paid under chapter 13 at DIC rates. For instance, in the case of a veteran suffering from a totally disabling service-connected disability whose death is adjudicated to be non-service-connected, the basic eligibility of his or her surviving spouse would continue to be predicated on the eligibility criteria found in section 1318 of title 38, United States Code.

*Id*. at 3653. Thus, even if there were any ambiguity in the plain language of the statement, and we hold that there is not, the legislative history accompanying the statute clarified the intent of Congress not to create a new avenue for obtaining DIC benefits through section 1311(a)(2) or any other part of section 1311.

Although counsel for Mrs. Barela purports to rely on the legislative history for the Veterans' Benefits Act of 1992, inexplicably he failed to mention the above-referenced portions of either the joint explanatory statement or the House Report. Moreover, at oral argument counsel repeatedly stated that there was nothing in the legislative history of section 1311(a)(2) that pertained to the question before the Court and specifically responded that there were no Committee reports of note.

An attorney appearing before this Court is expected to comply with the MODEL RULES OF PROFESSIONAL CONDUCT, unless otherwise provided by the Court's Rules of Admission and Practice. U.S. VET. APP. R. ADM. & PRAC. 4(a). An attorney, therefore, has the ethical duty to educate himself about the relevant law, analyze the factual and legal elements of a case, adequately prepare, and zealously represent his client's interest. *See* MODEL RULES OF PROF'L CONDUCT R. 1.1 (Competence) and 1.3 (Diligence) (2002). As an experienced counsel before this Court, Mrs. Barela's counsel is reminded not to depart from these obligations.

### III. CONCLUSION

Upon consideration by the Court of the foregoing analysis, the record on appeal, and the parties' pleadings, the October 18, 2005, Board decision is AFFIRMED.