**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 05-2194

JAMES E. SURSELY, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 26, 2007　　　　　　　　Decided　　December 21, 2007　)

*Landon E. Overby*, of Washington, D.C., for the appellant.

*Kenneth A. Walsh*, with whom *Tim S. McClain, Esq.*, General Counsel; *R. Randall Campbell, Esq.*, Assistant General Counsel; and *Edward V. Cassidy, Jr., Esq.*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and LANCE and SCHOELEN, *Judges*.

SCHOELEN, *Judge*:  The appellant, James E. Sursely, through counsel, appeals a May 27, 2005, Board of Veterans' Appeals (Board or BVA) decision in which the Board denied his claim for entitlement to more than one clothing allowance under 38 U.S.C. § 1162.  Record (R.) at 1-5.  This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  Because the statutory language in section 1162 clearly provides only one clothing allowance per eligible veteran, the Board's decision is affirmed.

**I.  BACKGROUND**

The appellant served in the U.S. Army from December 1966 to November 1969, and was discharged under honorable circumstances.  R. at 8.  He was injured by a land mine explosion in November 1969, and had his left arm amputated above the elbow, his right leg amputated above the

knee, and his left hip disarticulated.[1]  He  was awarded a 100% disability rating effective from the date of discharge.  R. at 18.  He wears an "artificial arm" and uses a wheelchair.  R. at 3.  He currently receives a VA clothing allowance.  R. at 2.

In March 2003, the appellant filed a claim stating that he "is entitled to an annual clothing allowance for the artificial arm, which is a prosthetic appliance that tends to wear and/or tear shirts," and that he "qualifies for a separate clothing allowance based upon loss of both legs that requires the use of a wheelchair that tends to wear and/or tear pants."  R. at 26.  He sought "retroactive payment of [the] annual clothing allowance from [the] date of initial authorization [on] October 13, 1972 to present."  *Id.*  Upon request by the St. Petersburg, Florida, VA regional office (RO), in July 2003, the Director of Compensation and Pension (Director) rendered an opinion that the plain language in 38 U.S.C. § 1162 and 38 C.F.R. § 3.810 (2003) did not allow for the payment of more than one clothing allowance per veteran, per year.  R. at 39.  On this basis, the RO denied the appellant's claim for multiple clothing allowances.  R. at 45-46.

On appeal the Board denied the claim.  The Board noted the Director's opinion that the plain language of 38 U.S.C. § 1162 provides for only one clothing allowance, and that the language of 38 C.F.R. § 3.810 authorizes only one clothing allowance because it is phrased in terms of "**The** . . . annual clothing allowance . . . ."  R. at 3 (emphasis added in Board decision).  The Board expressed its sympathy for the appellant's situation, but concluded that "the plain language of the statute and implementing regulation is that a single annual clothing allowance is payable."  R. at 4.

The issue before the Court is the interpretation of 38 U.S.C. § 1162, which states:

> The Secretary under regulations which the Secretary shall prescribe, shall pay a clothing allowance of $662 per year to each veteran who--
>> (1) because of a service-connected disability, wears or uses a prosthetic or orthopedic appliance (including a wheelchair) which the Secretary determines tends to wear out or tear the clothing of the veteran; or
>> (2) uses medication which (A) a physician has prescribed for a skin condition which is due to a service-connected disability, and (B) the Secretary determines causes irreparable damage to the veteran's outergarments.

---

[1] "Disarticulation" is defined as "amputation or separation at a joint."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 509 (29th ed. 2000).

The appellant contends that section 1162 is clear on its face, and the key term in the statute is the authorization of payment of a clothing allowance when a prosthetic or orthopedic appliance related to *a* service-connected disability wears or tears the veteran's clothing. Appellant's Brief (Br.) at 14. He reaches this conclusion by stating that the meaning of "a," prefacing "service-connected disability," is analogous to the word "each," citing a dictionary definition of "a." He argues: "When harmonized with the whole of [section] 1162, the plain meaning of the phrase 'a clothing allowance' read in conjunction with 'because of a service-connected disability' is that a veteran is entitled to a clothing allowance because of each service-connected disability that tends to wear out or tear clothing." *Id*. at 15. Alternatively, he argues that, if the statute is ambiguous, it should be construed in the veteran's favor: "In the absence of express Congressional intent to prohibit more than one clothing allowance because of separate service-connected disabilities affecting a veteran's upper and lower extremities, [section] 1162 must be construed in Mr. Sursely's favor." *Id*. at 18-19 (citing *Brown v. Gardner*, 513 U.S. 115 (1994); *McNight v. Gober*, 131 F.3d 1483 (Fed. Cir. 1997); *Smith v. Nicholson*, 19 Vet.App. 63 (2005)).

The Secretary responds that the plain language of the statute "provides for a single annual clothing allowance for each eligible veteran." Secretary's Br. at 7. He asserts that even "[a] veteran who wears or uses multiple prosthetic or orthopedic appliances due to multiple service-connected disabilities would still fit the statutory description of a veteran who 'because of a service-connected disability, wears or uses a prosthetic or orthopedic appliance.'" *Id*. The Secretary contends that the plain language of the statute would not allow multiple clothing allowances even if a veteran satisfied both subsections of the statute (i.e., used an orthopedic appliance that wears our or tears clothing and suffered from a skin condition that causes irreparable damage to outergarments). *Id*. at 8. The Secretary notes that, if the Court agrees with the appellant's interpretation of the statute, and makes "service-connected disability" the key criterion for a clothing allowance award, VA would be required to pay multiple clothing allowances to a veteran whose multiple service-connected disabilities all related to the same orthopedic appliance (and thus the wearing out or tearing of the same garment type). *Id*. at 9. The Secretary, addressing the appellant's contention that the word "a" in the statute should be read to mean "each," maintains that if the statute were read in that fashion, the Secretary would still not be authorized to pay more than one allowance per veteran, and that reading would actually have the effect of requiring payment of the allowance "only if each one of

the veteran's disabilities affected his clothing." *Id*. at 11. Addressing the legislative history of section 1162, the Secretary asserts that the statute makes clear that only one clothing allowance was intended. *Id*. at 12-13. Finally, the Secretary contends that, if the statute is ambiguous, VA's implementing regulation (38 C.F.R. § 3.810 (2007))[2] is a reasonable interpretation of the statute and thus is entitled to deference. *Id*. at 14-17.

The Court's inquiry into the proper interpretation of section 1162 is a question of law. The Court reviews the Board's interpretation of the law de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc); *see also Hensley v. West*, 212 F.3d 1255, 1262-64 (Fed. Cir. 2000) (discussing proper application of de novo review).

## II. ANALYSIS

### A. Statutory Language

When interpreting a statute, the Court must first determine whether Congress, in the statutory language, has spoken to the precise question at issue. If Congress has spoken directly, that is the end of the matter, and the Court and agency are required to "give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). However, if Congress has not directly addressed the precise question at issue, the Court must determine whether the agency's answer to the question, through regulation, is a

---

[2] The regulation provides, in pertinent part:

> (a) Except as provided in paragraph (d) of this section a veteran who has a service-connected disability, or a disability compensable under 38 U.S.C. [§] 1151 as if it were service-connected, is entitled, upon application therefor, to an annual clothing allowance as specified in 38 U.S.C. [§] 1162. The annual clothing allowance is payable in a lump sum, and the following eligibility criteria must also be satisfied:
>
> (1) A VA examination or hospital or examination report from a facility specified in § 3.326(c) discloses that the veteran wears or uses certain prosthetic or orthopedic appliances which tend to wear or tear clothing (including a wheelchair) because of such disability and such disability is the loss or loss of use of a hand or foot compensable at a rate specified in § 3.350(a), (b), (c), (d), of (f); or
>
> (2) The Chief Medical Director or designee certifies that because of such disability a prosthetic or orthopedic appliance is worn or used which tends to ware [sic] or tear the veteran's clothing, or that because of the use of a physician-prescribed medication for a skin condition which is due to the service-connected disability irreparable damage is done to the veteran's outergarments. For the purposes of this paragraph "appliance" includes a wheelchair.

38 C.F.R. § 3.810(a).

4

permissible construction of the statute. *Id.* at 843. To determine Congress's intent, the traditional tools of statutory construction are employed. *See id.* at 843 n.9. In evaluating whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure of the statute itself. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron*, 467 U.S. at 842); *see Trilles v. West*, 13 Vet.App. 314, 321 (2000) (en banc); *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). "[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." *Meeks v. West*, 12 Vet.App. 353, 354 (1999) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992)); *see also Sweitzer v. Brown*, 5 Vet. App. 503, 505 (1993).

The question at issue is whether a claimant may receive more than one annual clothing allowance under section 1162. The Court, evaluating the text and structure of the statute, and applying these principles of statutory construction, concludes that Congress intended to allow each eligible veteran only one clothing allowance.

Initially, as noted above, the appellant's primary contention is that this Court should adopt his definition of "a" to mean "each" and find that the statute unambiguously provides for "a clothing allowance because of each service-connected disability that tends to wear out or tear clothing." Appellant's Br. at 15. Other than citing *Merriam-Webster's Collegiate Dictionary* 1 (11th ed. 2004), the appellant fails to provide any persuasive support for such a reading. Additionally, when given the opportunity at oral argument, the appellant was unable to provide any further support for his proposition. It is notable that the appellant argues that the statute unambiguously provides for his interpretation, but in order to reach that result the word "a" must be replaced with "each." *See Jones v. Brown*, 41 F.3d 634, 638 (Fed. Cir. 1994) ("In determining the plain meaning of statutory language, 'legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting *Ardestani v. INS*, 502 U.S. 129, 134 (1991))). "The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' when a contrary legislative intent is clearly expressed." *Ardestani*, 502 U.S. at 135-36 (internal citations omitted) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

5

The plain language of section 1162 authorizes "a clothing allowance" in a fixed dollar amount to "each veteran" whose service-connected disability either requires the veteran to use an appliance that wears or tears clothing *or* whose treatment for a service-connected skin condition causes irreparable damage to the veteran's outergarments. Accordingly, under subsection (1), once a claimant has established "use" of an appliance that tends to wear out or tear the appellant's clothing and has shown that a service-connected condition necessitated the use of the appliance, the claimant has demonstrated entitlement to a clothing allowance. Similarly, under subsection (2), a veteran who "uses medication which (A) a physician has prescribed for a skin condition which is due to a service-connected disability, and (B) the Secretary determines causes irreparable damage to the veteran's outergarments" (38 U.S.C. § 1162(2)) is entitled to a clothing allowance. The statute links these two different methods of establishing entitlement to a clothing allowance by the word "or." The word "or" as used in the statute is a disjunctive conjunctive, indicating that the sentences are to be looked at separately, i.e., expressing an alternative between the groups of words it joins. *See Reiter v. Sonotone Corp*, 442 U.S. 330 (1979). Thus, fulfilling the requirements of *both* subsections would not lead to any greater clothing allowance than fulfilling the requirements of one subsection because the statute authorizes the Secretary to pay "a clothing allowance to each veteran" who satisfies the criteria of either subsection.

The Court also observes that, notwithstanding the fact that medication for a skin condition could affect outergarments worn on different parts of the body, thus damaging different types of clothing, or that a veteran might have multiple service-connected disabilities that require the use of medication, section 1162(2), as written, does not provide for more than one clothing allowance. *See Meeks*, *supra*. The Court finds this persuasive support for the conclusion that subsection (1) was also intended to provide for only one clothing allowance, regardless of the fact that a veteran might be able to satisfy it through several independent service-connected conditions. Arguably, Congress was aware that a multiple amputee's prosthetic devices could potentially wear out different types of clothing, however, Congress chose to provide only for "a clothing allowance," not taking into account what type of clothing might be damaged by various disabilities. Finally, the Court recognizes that if the appellant's rationale were adopted, it appears that multiple clothing allowances also would be awarded to veterans whose multiple service-connected disabilities all related to the same orthopedic appliance, only resulting in wearing out or tearing of only one type of garment.

6

This is irrational and clearly not the result that Congress intended in enacting section 1162. Based on the foregoing, the Court is convinced that section 1162 is clear on its face and provides for only one clothing allowance per eligible veteran.

As noted above, there is a strong presumption that, unless rebutted by a clearly expressed legislative intent, the plain language of a statutory provision expresses congressional intent. The appellant did not address the legislative history of section 1162, but the Secretary has done so. Although it is unclear why the Secretary did not address legislative history in his brief, at oral argument he presented legislative history illustrating the congressional intent to provide for only one clothing allowance per eligible veteran. As part of the enactment of section 1162, Congress estimated the first-year cost for implementation to be $6.6 million. S. REP. NO. 92-845, at 10 (1972). Before estimating that sum, Congress sought from VA an estimate of how many veterans would be eligible for the clothing allowance. According to the Senate report addressing the enactment of section 1162, the Senate Committee quoted VA's estimate that 44,000 veterans would be eligible for the clothing allowance. *Id*. Upon this basis, Congress made the following calculation: $150 multiplied by 44,000 eligible veterans (receiving only one clothing allowance each) equals the $6.6 million estimated for the first year of the clothing allowance. Thus, the history of the initial calculation of the estimated cost of the clothing allowance provision further supports the conclusion that Congress intended each eligible veteran to receive only one clothing allowance.

## B. Regulatory Language

The appellant also asserts that, if the statute were ambiguous, the Board committed legal error in construing the statute and implementing regulation against him in violation of *Brown v. Gardner*. *Brown* holds that, in interpreting ambiguities in veterans benefits statutes, "interpretive doubt is to be resolved in the veteran's favor." 513 U.S. at 118. The Federal Circuit has discussed the relationship between *Brown* and the second part of the *Chevron* analysis, cautioning that "a veteran 'cannot rely upon the generous spirit that suffuses the law generally to override the clear meaning of a particular provision,'" *Disabled American Veterans v. Gober*, 234 F.3d 682, 692 (Fed. Cir. 2000) (quoting *Boyer v. West*, 210 F.3d 1351, 1355 (Fed. Cir. 2000) and *Smith v. Brown*, 35 F.3d 1516, 1526 (Fed. Cir. 1994)); that "where the meaning of a statutory provision is ambiguous, [the Court] must take care not to invalidate otherwise reasonable agency regulations simply because they do not provide for a pro-claimant outcome in every imaginable case," *Sears v. Principi*,

7

349 F.3d 1326, 1331-32 (Fed. Cir. 2003); and that "[w]here . . . a statute is ambiguous and the administering agency has issued a reasonable gap-filling or ambiguity-resolving regulation, [the Court] must uphold that regulation," *id.* at 1332.

The appellant argues that, because 38 C.F.R. § 3.810 "employs language almost identical to that contained in the statute," "there is nothing that distinguishes the regulation from the statute." Appellant's Br. at 17. This argument assumes that the statute is ambiguous, and that a regulation that "merely parrots the language of the statute . . . cannot be said to have filled a 'gap' or resolved any ambiguity." Appellant's Reply Br. at 7 (citing *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006)). The Court agrees that the regulation and the statute are indistinguishable with regard to the provisions relevant to the appellant's argument. Pursuant to § 3.810(a):

> A veteran who has a service-connected disability . . . is entitled to an annual clothing allowance . . . . The annual clothing allowance is payable in a lump sum, and the following eligibility criteria must also be satisfied:
> (1) A VA examination or hospital report . . . discloses that the veteran wears or uses certain prosthetic or orthopedic appliances which tend to wear or tear clothing (including a wheel chair) because of such disability.

38 C.F.R. § 3.810(a). No part of this regulation departs from the statutory language granting entitlement to "an annual clothing allowance." Because the Court holds that the statutory language is clear and that the statutory and regulatory language are indistinguishable, the Court concludes that the regulation must also be clear in barring receipt of multiple clothing allowances. Nonetheless, the regulation has no bearing on what the sum of the allowance would be, but instead outlines the mechanism by which VA should determine which veterans qualify for the clothing allowance, namely, those veterans who receive a VA examination or hospital report disclosing the use of a qualifying appliance and resulting wearing out or tearing of clothing. This is a reasonable gap-filling provision that the Court is bound to uphold. *See Sears*, 349 F.3d at 1332. In spite of the appellant's argument, evaluation of the regulatory language provides no reason to apply *Brown* in this instance.

### C. C&P Director Letter

Finally, the appellant challenges the Board's reliance on the C&P Director's letter, in which the Director stated that section 1162 only allows for one clothing allowance per eligible veteran per year. R. at 3 (citing R. at 39). The appellant argues that the Court should only afford the opinion

deference in accord with its "power to persuade." Appellant's Reply Br. at 10 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

Contrary to the appellant's assertions, *Smith v. Nicholson*, 451 F.3d 1344 (Fed. Cir. 2006) governs the appropriate deference to apply to the Director's opinion letter, to the extent the letter embodies VA's interpretation of its own regulation. In *Smith*, the Federal Circuit disagreed with the claimant's argument that VA's interpretation of a regulation, which was expressed in unpublished statements or litigation positions, was not entitled to deference. *Id*. at 1351. The court found: "Contrary to *Chevron* deference, which applies to an agency's interpretation of a statute and generally requires relatively formal administrative procedures such as notice and comment rulemaking or formal adjudication, an agency's interpretation of its regulations does not require observance of those formalities in order to be afforded deference." *Id.* Nevertheless, because the Court has determined that the statute is clear, and that the regulation is a reasonable gap-filling provision, the question of the deference to be afforded to this letter is immaterial to resolution of this appeal.

### III. CONCLUSION

The Court sympathizes with the appellant's condition and his efforts to seek the greatest possible recompense. However, given the limits of the statutory language governing the benefit he seeks, the Court is unable to grant the appellant the relief he requests. Congress of course can choose to provide for multiple clothing allowances, but that decision is the responsibility of the legislative branch, not this Court. *Cf. Morton v. West*, 12 Vet.App. 477, 486 (1999).

After consideration of the parties' pleadings and contentions at oral argument, and a review of the record, the Board's May 27, 2005, decision is AFFIRMED.