UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-1759

STEVE W. MOUNTFORD, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 30, 2011                        Decided June 21, 2011)

*Amy Fletcher*, of Washington, D.C., for the appellant.

*Jessica M. Swartz*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Kenneth A. Walsh*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and LANCE and DAVIS, *Judges*.

DAVIS, *Judge,* filed the opinion of the Court. KASOLD, *Chief Judge*, filed a dissenting opinion.

DAVIS, *Judge*: U.S. Air Force veteran Steve W. Mountford appeals through counsel from a February 26, 2009, Board of Veterans' Appeals (Board) decision that denied entitlement to restoration of benefits for his service-connected schizophrenia prior to May 25, 2004, because he was found to be a "fugitive felon" under 38 U.S.C. § 5313B.

On December 27, 2001, Congress enacted 38 U.S.C. § 5313B. That statute bars veterans and their dependents from receiving VA benefits while veterans or their beneficiaries are "fugitive felons." 38 U.S.C. § 5313B(a). Mr. Mountford argues that the Board's determination that he was a fugitive felon from December 21, 2001, to May 25, 2004, pursuant to section 5313B was erroneous as a matter of law and that his benefits should be fully restored for that period. For the following reasons, the Court will affirm the Board's February 2009 decision.

# I. BACKGROUND

Mr. Mountford served on active duty in the U.S. Air Force from October 1977 until August 1978 when he was granted medical retirement. On November 16, 1978, Mr. Mountford was awarded service connection for schizophrenia.

Later, in April 1994, after pleading nolo contendere to charges of felony burglary and criminal mischief in Florida, Mr. Mountford was granted leniency and placed on probation.[1] *See* Record (R.) at 295. In September 1994, based on Mr. Mountford's probation officer's sworn statement that Mr. Mountford had violated his probation,[2] an arrest warrant was issued. That warrant remained unserved and outstanding for nearly 10 years. *See id.* at 296, 373.

On December 27, 2001, while Mr. Mountford's warrant was outstanding, Congress enacted 38 U.S.C. § 5313B, which provides in part that "[a] veteran who is otherwise eligible for a benefit . . . may not be paid or otherwise provided such benefit for any period during which such veteran is a fugitive felon." 38 U.S.C. § 5313B(a). The statute defines "fugitive felon," as a person who is a fugitive by reason of

> (A) fleeing to avoid prosecution, or custody or confinement after conviction, for an offense, or an attempt to commit an offense, which is a felony under the laws of the place from which the person flees; or
> (B) violating a condition of probation or parole imposed for commission of a felony under Federal or State law.

38 U.S.C. § 5313B(b)1(A),(B).

In April 2004 VA notified Mr. Mountford of the warrant and informed him that his benefits could be temporarily suspended pursuant to the fugitive felon statute. Shortly thereafter Mr. Mountford turned himself in and was found guilty of both the violation and the underlying crimes and was sentenced to time served effective May 25, 2004.[3] *See* R. at 106-07. On June 4, 2004, VA sent Mr. Mountford notice stating: "Effective December 27, 2001 your monthly compensation

---

[1] The Florida court system contains a pro-defendant provision where a trial judge may withhold adjudication of guilt if the judge places the defendant on probation and judgment is withheld subject to compliance with the conditions of that probation. FL. R. CRIM. P. 3.670.

[2] The probation officer's sworn statement provided that Mr. Mountford had violated the conditions of his probation by failing to submit two monthly written reports and pay three months of supervisory fees totaling $156.

[3] Mr. Mountford was actually adjudicated guilty June 2, 2004, but the Florida court recognized the violation of probation and adjudication of guilt as of May 25, 2004, the date the warrant was served.

benefits are terminated." R. at 331. On June 16, 2004, Mr. Mountford, with the help of the American Legion, submitted paperwork to VA to have his benefits reinstated. *See id.* at 290, 295, 296, 298. The evidence submitted at this time included documentation of a judgment against Mr. Mountford for the underlying crimes of felony burglary and criminal mischief as well as an admission to the violation of probation. *See id.* at 295-96. There was no evidence submitted, however, of the warrant being cleared or any information regarding when the warrant was served.

On July 2, 2004, the Togus, Maine, regional office (RO) erroneously informed Mr. Mountford that his benefits had been reinstated as of the date of the initial termination, December 27, 2001, effectively eliminating any period in which he was a fugitive felon under section 5313B. *See id.* at 288-89. The error appears to have been caused by the RO's lack of information regarding the date the warrant was served. *See id.* at 290, 295, 296.

In February 2006, VA notified Mr. Mountford that it was informed of the existence of the same warrant by law enforcement authorities and that the warrant was still outstanding. *See id.* at 167-68. On July 31, 2006, VA first learned that the warrant was served on May 25, 2004. *See id.* at 162. In August 2006, based on the newly obtained evidence, the Togus RO found that Mr. Mountford had wrongfully received benefits from December 27, 2001, to May 25, 2004, because of his fugitive felon status, causing an overpayment in excess of $63,000.[4] *See id.* at 159-61. Mr. Mountford does not dispute any of these facts.

The question before the Court is whether an adjudication of guilt is required under 38 U.S.C. § 5313B(1)(b) for a veteran to be considered a fugitive felon. The Court's inquiry into the proper interpretation of section 5313B is a question of law, and the Court reviews the Board's interpretation de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc); *see also Hensley v. West*, 212 F.3d 1255, 1262-64 (Fed. Cir. 2000) (discussing proper application of de novo review).

---

[4] While the RO in February 2006 determined that Mr. Mountford had received an overpayment in benefits, it did not find that the July 2, 2004, RO decision contained clear and unmistakable error. *See* 38 C.F.R. § 3.105 (2010). However, counsel for appellant at oral argument conceded that any error in VA's failure to follow procedure in the August 2006 decision was harmless. *See* Oral Arg. at 19:33-20:45, *available at* http://uscourts.cavc.gov/ oral_arguments/2011OralArguments.cfm; *see also* 38 U.S.C. § 7261; *see also Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (indicating appellant must allege and demonstrate prejudice or Court will conclude procedural error is harmless). Moreover, as a result of the July 2004 error, Mr. Mountford in effect received an interest-free loan from the Government for more than two years and therefore actually benefitted from the mistake.

## II. ARGUMENTS OF THE PARTIES

### A. The Appellant

Mr. Mountford argues that the Court should reverse the Board's finding that the appellant was a "fugitive felon" under 38 U.S.C. § 5313B for the period December 27, 2001, through May 25, 2004, because an adjudication of guilt is required under the statute and was not entered until June 2004. Appellant's Brief (Br.) at 7. He contends that the language "commission of a felony" signals Congress's desire to include as fugitive felons only those who have been adjudicated guilty of a felony–not those, like him, who have pled nolo contendere. *Id.*

Similarly Mr. Mountford contends that the Board interpreted 38 U.S.C. § 5313B(b)1(B) in such a way as to inflict upon him an unconstitutional bill of attainder and deprive him of his protected property interest in the continued receipt of VA disability benefits without due process. *Id.* at 12-15.

Alternatively, he argues that the Court should reverse the Board's finding that he was a fugitive felon under 38 U.S.C. § 5313B because a plea of nolo contendere does not act as an admission of guilt for purposes of subsequent civil proceedings. *Id.* at 15-18.

### B. The Secretary

The Secretary responds that Mr. Mountford was a fugitive felon under 38 U.S.C. § 5313B(b)1(B) because he violated the terms of his probation for the commission of a felony, not for the underlying felony. Secretary's Br. at 9-11. Therefore, whether or when appellant was adjudicated guilty of felony burglary has no bearing on VA's application of the fugitive felon statute in this case. *Id.* at 11-12.

The Secretary also responds that Mr. Mountford's interpretation of 38 U.S.C. § 5313B does not meet the elements of a bill of attainder. *Id.* at 15-24. He points out that for a law to be a bill of attainder it must "legislatively determine[] guilt and inflict[] punishment without provision of the protections of a judicial trial." *Id.* at 15 (quoting *Nixon v. Admin'r of Gen. Servs.,* 433 U.S. 425, 468 (1977)). Therefore, he argues that the Board's interpretation cannot be a bill of attainder because it is not a legislative determination. *Id.*

Additionally the Secretary responds that the Board did not adjudicate Mr. Mountford's guilt but only found that he was a fugitive felon under the statute for a violation of probation. Mr. Mountford was afforded due process because of the procedures used by VA, including notice of the

4

violation, information on how to rectify the violation, a hearing before the decision officer, and the chance to appeal from any findings of the decision officer. *Id.* at 23. Thus there is no merit to Mr. Mountford's argument that he was not afforded due process.

## III. ANALYSIS

### A. Plain Language

The Court, in determining whether an adjudication of guilt is required for a veteran or beneficiary to be a fugitive felon, turns first to the language of the statute. "'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.'" *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. MSPB*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)). "In evaluating whether Congress has directly spoken to the question at issue, the starting point is to examine the language and structure of the statute itself." *Sursely v. Peake*, 22 Vet.App. 21, 24 (2007); *see also Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993). "'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992)).

The plain language of section 5313B(b)(1)(B) provides that a person is a fugitive felon by reason of "violating a condition of probation or parole imposed for commission of a felony under Federal or State law." 38 U.S.C. § 5313B(b)1(B). The plain language is unambiguous: The violation of a condition of probation makes one a fugitive felon. Therefore, the question for VA is whether that probation was imposed based on the commission of a felony. The ambiguity arises in the word "commission." Mr. Mountford argues that a "commission" requires an adjudication of guilt.

"Commission" is defined as "[t]he act of doing or perpetrating (as a crime)." BLACK'S LAW DICTIONARY 306 (9th ed. 2009) [hereinafter BLACK'S]. Under Florida law, probation may not be imposed without, at minimum, a plea of nolo contendere by a defendant. FLA. STAT. § 948.01. A plea of nolo contendere is an admission of the facts for the purpose of the pending prosecution. *Vinson v. State*, 345 So. 2d 711 (Fla. 1977). While Mr. Mountford is correct that a plea of nolo

5

contendere cannot be used as an admission of the underlying facts in a subsequent civil suit, *see id.*, the imposition of probation is part of the criminal prosecution.

In the present case, the Board noted the following conclusions of law:

(1) Under Florida law, burglary is a felony. *See* Fla. Stat. § 810.02 (1994). (2) Under Florida Statutes . . . section 948.01, probation may not be imposed without, at minimum, a plea of nolo contendere by a defendant; under Florida law, a plea of nolo contendere is an admission of the facts for the purpose of the pending prosecution. [*id.*].

R. at 6.

Mr. Mountford's argument that an adjudication of guilt is required under section 5313B(b)(1)(B) would be more convincing had Congress used the phrase "[v]iolating a condition of probation . . . imposed for the *conviction* of a felony under Federal or State law." The term "conviction" is defined as "[t]he act or process of judicially finding someone guilty of a crime." BLACK'S 384. A broader review of the fugitive felon statute reveals that the word "conviction" appears in 38 U.S.C. § 5313B(b)(1)(A). Had Congress intended an adjudication of guilt to be necessary under section 5313B(b)(1)(B), mirroring the language "conviction" used in section 5313B(b)(1)(A) would have been an obvious means of triggering such a requirement. The Court therefore finds that a withholding of adjudication has no bearing on whether a veteran "violat[ed] a condition of probation or parole imposed under commission of a felony." Congress has not indicated an intention to except those who have already received a benefit in the withholding of adjudication from such pro-defendant statutes as the one Mr. Mountford benefitted from in Florida. *See* FL. R. Crim. Proc. 3.670.

As an adjudication of guilt is not required for an individual to be considered a fugitive felon under section 5313B(b)(1)(B), the Court discerns no merit in Mr. Mountford's argument that 38 U.S.C. § 5313B does not apply to his situation. The Board determined that Mr. Mountford admitted all the facts necessary to find him guilty of felony burglary, but that in lieu of a finding of guilt, a Florida judge granted leniency and withheld a guilty judgment for a felony pending Mr. Mountford's compliance with the conditions of probation–conditions he violated numerous times in the five months after they were imposed. Mr. Mountford does not dispute any of these facts, specifically that he violated the probation imposed for his act of felony burglary. Mr. Mountford, in 1994, "violat[ed]

6

a condition of probation or parole imposed under commission of a felony under Federal or State law," despite the fact he was not adjudicated guilty until 2004 and was therefore a fugitive felon from December 27, 2001, to May 25, 2004. *See* 38 U.S.C. § 5313B(b)(1)(B). As the statute provides, a fugitive felon may not be paid or otherwise provided such benefit for any period during which such veteran is a fugitive felon.

Our colleague's dissent is based on arguments not raised by the parties, nor discussed at oral argument, and is not central to the main holding. It is not the practice of a court to raise new arguments for the parties. *See Roberts v. Shinseki*, __ F.3d __, __, No. 2010-7104, slip op. at 3 n.1, 2011 WL 2162899, at *1 n.1 (Fed. Cir. June 1, 2011) (The Federal Circuit expressly declined to address arguments not raised by the parties.). The dissent attacks the plain-meaning approach of the majority's definition of "fugitive felon" and argues instead that, because Mr. Mountford may not have been aware of the existence of a warrant, he could not be a fleeing felon under the statute. In essence, the dissent is reading into the plain meaning of the words "fugitive felon" a scienter requirement. Nowhere in the statute (section 5313B(b)(1)) or its legislative history is the slightest suggestion that one must have the prerequisite knowledge imposed by the dissent. Rather, "fugitive felon" under this statute is a term of art. The plain language of the statute very simply defines a "fugitive felon" as one who violates the conditions of probation. Congress has spoken with no ambiguity. Moreover, Mr. Mountford was acutely aware of the conditions of his probation, including his duties to pay supervisory fees and submit monthly reports to his probation officer. He certainly was advised and understood the consequences of his failure to comply with the terms and conditions of his probation. Whether or not he had actual knowledge that a warrant had been issued was irrelevant and certainly not a part of the statutory requirement.

### B. Due Process

Mr. Mountford next argues that the Board deprived him of his VA benefits without due process "by conceding that Appellant was not adjudicated guilty of any offense in 1994, but determining nonetheless that Appellant, had, in fact, committed a felony offense at that time." Appellant's Br. at 14. Because the Court has determined that, based on the plain language of the statute, all that is required to be considered a fugitive felon under section 5313B(b)(1)(B) is a

7

violation of probation for the commission of a felony and not an adjudication of guilt on the underlying felony, this argument also fails.

Since *Mapp v. Ohio*, 367 U.S. 643 (1961), it has been clear that due process governs State court procedures for searches and arrests, including the procedures to issue warrants. The Supreme Court has also made clear that the responsibility for the accuracy of warrants lies with the issuing court and not the officials executing the consequences of the warrant:

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Baker v. McCollan*, 443 U.S. 137, 145-46 (1979).

In this case, Mr. Mountford has not even alleged that the procedures of the Florida court system for issuing the warrant in this case violate due process. Hence, the Court has no cause to question whether the warrant for probation violation was issued without probable cause or otherwise in violation of due process. Nor has the appellant alleged that VA's procedures for determining the existence of the warrant are in any way so error prone or inaccurate as to violate due process. Therefore, the appellant's allegations that he was denied due process are unfounded.

To the extent that the appellant asserts that he was not provided trial-like procedures to challenge the allegation that he committed the underlying offense, his argument is doubly misplaced. First, as noted above, Mr. Mountford's guilt of the underlying crime was not the basis of withholding his benefits under the statute. Second, regardless of whether his benefits were withheld based upon his probation violation or his commission of the charged offense, it is the Florida court system—not the Board—that is obligated to provide due process to accurately make these determinations. VA's obligation is to accurately determine the results of the proceedings in the State court before depriving a veteran of benefits pursuant to the statute. In this case, Mr. Mountford has not even alleged that either system did not perform the duties allocated to it.

8

## C. Bill of Attainder

Finally, Mr. Mountford argues that the Board interpreted the statute in such a way as to inflict upon him an unconstitutional bill of attainder. A bill of attainder is a special legislative act prescribing punishment, without a trial, for a specific person or group. *See* BLACK'S 188. Article I, section 9 of the U.S. Constitution prohibits the legislative branch from passing bills of attainder.[5] Accordingly, Congress may not determine guilt and inflict punishment upon an identifiable individual without provision of the protections of a judicial trial. *Nixon v. Admin'r of Gen. Servs., supra*. The elements of a bill of attainder are (1) specification of affected persons; (2) punishment; and (3) lack of judicial trial. *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.,* 468 U.S. 841, 847 (1984). "The fact that activity engaged in prior to the enactment of the legislation may be regarded administratively and judicially as relevant" under a statute does not make it an impermissible bill of attainder when it is directed to activity that continues after the effective date of the legislation. *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 87 (1961). "'[O]nly the clearest proof could suffice to establish the unconstitutionality of a statute on [the grounds that it is a bill of attainder].'" *Id.* at 83 (quoting *Flemming v. Nestor*, 363 U.S. 603, 617 (1960)).

The statute in this case is clearly not a bill of attainder for at least three reasons. First, the statute is not directed at Mr. Mountford or any group defined by actions taken prior to the legislation. Second, the punishment is not imposed by the statute in lieu of a judicial proceeding, but rather as an additional consequence of a judicial proceeding. Third, the statute did not punish Mr. Mountford's pre-enactment behavior, but instead added a consequence to his ongoing probation violation. Thus, Congress was not circumventing the judicial process to intentionally harm Mr. Mountford, but rather was promoting sound public policy by establishing additional consequences to augment the actions of the appropriate criminal courts.[6]

---

[5]The bill of attainder clause traditionally applies only to prevent Congress from passing unjust legislation, not to impede a member of the executive branch, in this case the Secretary in interpreting an otherwise permissible statute.

[6]Here, although not raised by the parties, the dissent additionally argues that section 5313B does not allow the Secretary to recover benefits he has already paid but only prohibits the Secretary from making payments to fugitive felons. If section 5313B were the only statute at play in this process, perhaps the dissent would have a point; however, that is not the case. Pursuant to 38 U.S.C. § 3685(a), "[w]henever the Secretary finds that an overpayment has been made to a veteran . . . , the amount of such overpayment shall constitute a liability of such veteran or . . . to the United States."

## IV. CONCLUSION

Based on the foregoing, the Court AFFIRMS the February 26, 2009, Board decision.

KASOLD, *Chief Judge*, dissenting: Mr. Mountford is a U.S. Air Force veteran, service connected for schizophrenia since 1978; he has had a total disability rating since 1997. He pled nolo contendere to attempted burglary in 1994 and was placed on probation. He failed to comply with all of the probationary requirements and a warrant for his arrest issued in September 1994. The warrant remained outstanding for over nine years, despite Mr. Mountford's travels into and out of the country in relative freedom. The Board found that Mr. Mountford had no knowledge of the warrant, and the record reflects that upon notice from VA that a warrant was outstanding and that he should explain why his VA benefits should not be recouped and stopped, Mr. Mountford promptly turned himself in and settled the matter with the state. Subsequently, the Secretary notified Mr. Mountford that his benefits were fully restored. For reasons unexplained, and without following regulation, the Secretary initiated action two years later to recoup over $63,000 for a period of time that Mr. Mountford received benefits and when neither he nor VA was aware that he had a warrant outstanding, culminating in this appeal.

Accepting arguendo the majority's general rejection of Mr. Mountford's specific arguments, and recognizing the general rule that "refusal to consider arguments not raised is a sound prudential practice," I nevertheless note and agree with the observation that courts have an "obligation to decide according to the law," and therefore, "there are times when prudence dictates the contrary." *Davis v. United States,* 512 U.S. 452, 464-65 (1994) (Scalia, J., concurring); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (noting that although courts are essentially "arbiters of

---

"Any overpayment referred to in subsection (a) . . . may be recovered . . . in the same manner as any other debt due to the United States." 38 U.S.C. § 3685(c); *see also* 38 U.S.C. § 5314(a) ("[T]he Secretary shall . . . deduct the amount of the indebtedness of *any* person who has determined to be indebted to the United States by virtue of such person's participation in a benefits program administered by the Secretary from future payments made to such person under *any* law administered by the Secretary." (Emphasis added)). Thus, there was no need for section 5313B to specifically mention the recovery of benefits.

legal questions presented and argued by the parties before them [,] . . . not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research").[7]

This appeal involves a question of jurisdiction, as well as obvious statutory and regulatory errors prejudicial to Mr. Mountford that flow from his general contention that the Board wrongfully applied section 38 U.S.C. § 5313B. Because interpretation of section 5313B is a matter of first impression for the Court and the errors in the Board's decision are patent and prejudicial, they should have been addressed by the Court. *See Davis* and *Carducci,* both *supra*. The errors are threefold.

1. *Retrospective Application.* There is nothing in section 5313B that permits the Secretary to recover benefits he already has paid. Rather, section 5313B prohibits the Secretary from making payments to veterans who are fugitive felons, once the Secretary is aware that a veteran is a fugitive felon. The prohibition is prospective, not retrospective; it is dependent on the Secretary having knowledge that a person is a fugitive felon. *See* 38 U.S.C. § 5313B(a) (providing in pertinent part that "[a] veteran who is otherwise eligible for a benefit specified in subsection (c) may not *be paid* or otherwise provided such benefit for any period during which the veteran is a fugitive felon" (emphasis added)); *see also United States v. LaBonte*, 520 U.S. 751, 757 (1997) ("[W]e assume that in drafting this legislation, Congress said what it meant.").

The legislative history amply supports the prospective nature, and plain meaning, of the legislation and the action authorized therein. *See Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991) (plain meaning controls unless it demonstrably conflicts with legislative intent). Before section 5313B was enacted into law, there was no provision "to prevent veterans who are fugitives from justice from receiving VA benefits." S. REP. NO. 107-86, at 17 (2001). Section 5313B is "designed to *cut off the means* of support that allows [sic] fugitive felons to *continue to flee*." *Id.* (emphasis added). Retrospective benefit recovery, as the Board and the majority permit, has nothing to do with cutting off a fugitive's means to continue to flee. And large, retroactive recoveries, as in

---

[7] My colleagues definitively state that my dissent addresses issues "not central to the main holding". *Ante* at 7. But making such a statement does not make it so. The central holding is that section 5313B authorizes the Secretary to retroactively take benefits from a veteran who has a warrant out for his arrest, even when the Board finds that the veteran had no knowledge that a warrant was outstanding, and even when the veteran takes prompt action to clear the warrant when he learns of the warrant. I leave to the reader to determine if I address issues "central to the main holding."

11

this case, will impact a veteran's future benefits long after his fugitive felon status ends. Nothing in section 5313B supports such action.

Comparison to 42 U.S.C. § 1382(e)(4)(A), the Social Security statute upon which section 5313B is based, is instructive. The Social Security statute is drafted in terms of when a person is ineligible to receive Social Security benefits. *See* 42 U.S.C. § 1382(e)(4)(A) ("No person shall be considered an eligible individual . . . with respect to any month if during such month the person is . . . violating a condition of probation or parole imposed under Federal or State law."). In contrast, the veterans benefits statute, section 5313B, is drafted in terms of prohibiting VA from making payments; it does not define periods of ineligibility. *See* 38 U.S.C. § 5313B ("A veteran who is otherwise eligible [ ] may not be paid. . . ."). The legislative history clearly demonstrates that Congress considered the Social Security legislation, which contains the "ineligibility" construction, but chose instead to prohibit payment from the Secretary, which intuitively requires knowledge on the Secretary's part that a veteran is a fugitive felon before payment can be stopped. The Board's interpretation ignores this obvious distinction between the Social Security and veterans benefits statutes, and permits the Secretary to recover benefits from Mr. Mountford as though section 5313B defined the eligibility of a veteran to receive benefits as opposed to prohibiting the payment of benefits once the Secretary is aware a veteran is a fugitive felon. Essentially, despite the significantly different statutory approaches, the majority treat section 5313B as a duplicate of 42 U.S.C. § 1382(e)(4)(A). It is not. *See LaBonte*, *supra*.[8]

2. "*Fugitive*." Noting that section 5313B(b)(1) provides that "a fugitive felon is 'a person who is a fugitive by reason of . . . violating a condition of probation or parole imposed for commission of a felony under Federal or State law,'" the majority conclude that "[t]he plain language of the statute very simply defines a 'fugitive felon' as one who violates the conditions of probation."

---

[8] The suggestion of my colleagues that because the Secretary is authorized by statute to recover overpayments, there was no need to state such authority in section 5313B, misses the point. *Ante* at 9 n.6. There is no dispute over the Secretary's authority to recover an overpayment. But there has to be an overpayment. Congress quite clearly rejected the legislative approach taken with Social Security benefits, which is to deny eligibility to a person in a fugitive felon status. Had Congress taken that approach with regard to veterans, payments made while a veteran was a fugitive felon would constitute an overpayment because the veteran would not be eligible to receive them. Instead, when addressing the same issue with veterans, Congress placed the burden on the Secretary to stop payments whenever the Secretary learned that a veteran was a fugitive felon. Until the Secretary learns that a veteran is a fugitive felon, it cannot be said that the Secretary has violated the law, and thus there has been no overpayment to be recovered.

12

*Ante* at 7. This ignores, however, the fact that Congress chose to describe a fugitive felon in terms of the reason one is a fugitive, as opposed to redefining the plain and natural meaning of the word "fugitive." Otherwise stated, although one might become a fugitive felon "by reason of" violating probation, there remains the overarching requirement that one must nevertheless be a "fugitive" to be deemed a "fugitive felon." This invokes considerations of due process such as notice that one is wanted.

Indeed, a fugitive is "[a] person who flees or escapes; a refugee." BLACK'S LAW DICTIONARY 741 (9th ed. 2009); *see also* WEBSTER'S II NEW COLLEGE DICTIONARY 451 (3rd ed. 2001) (defining "fugitive" as "[f]leeing, as from the law"). It is self-evident that one must have some knowledge of being wanted in order to be fleeing, and this is the understanding encoded in other provisions of Federal law. *See, e.g.,* 28 U.S.C. § 2466 (entitled "fugitive disentitlement," and providing that a person forfeits the use of the U.S. courts if he, inter alia, leaves the jurisdiction of the United States "after notice or knowledge of the fact that a warrant or process has been issued for his apprehension"); 18 U.S.C. § 921(a)(15) ("The term 'fugitive from justice' means any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding.").[9]

Moreover, the Veterans Benefits Administration's *Adjudication Procedures Manual* (M21-1MR) interprets "fugitive" consistent with this natural meaning. According to the M21-MR, an outstanding arrest warrant raises only a presumption that the beneficiary is a fugitive felon for VA purposes. M21-MR, pt. X, ch. 16, 2. Indeed, when a beneficiary denies ever having received notice of a warrant, the RO is instructed to contact the Office of Inspector General (OIG), whose duties are described as follows:

> The OIG fugitive felon coordinator will generally recommend that benefits payments
> not be discontinued if the evidence establishes that the beneficiary was *unaware* of

[9] My colleagues also definitively state that "[n]owhere in the statute (section 5313B(b)(1)) or its legislative history is the *slightest* suggestion that one must have the prerequisite knowledge *imposed by the dissent*." *Ante* at 7 (emphasis added). But, again, stating it does not make it so. I leave to the reader to determine whether the use by Congress of the word "fugitive" was done without an understanding of its well-accepted meaning, or whether Congress intended to alter the commonly recognized meaning from English-language dictionaries. And I query, if there is not even the *slightest* suggestion in legislation or legislative intent that knowledge of an outstanding warrant is an element of being a fugitive felon, and I am *imposing it* in the first instance, why does the VA *Adjudication Procedures Manual* state that such knowledge is an element? *See* M21-1MR, pt. X, ch. 16.2.

13

the warrant *or made good faith attempts to clear the warrant* as soon as he/she knew
or should have known of the existence of the warrant.

*Id.* at 12 (emphasis added).

Here, it is undisputed that the Board found that Mr. Mountford was unaware that he was the subject of an outstanding arrest warrant and that he promptly cleared the warrant when he learned about it. By the plain meaning of the term "fugitive," he was not a "fugitive felon." And, by the specific terms of the M21-MR, his VA benefits should not have been recouped.

3. *Grave Procedural Error and Jurisdiction.* It is well established that a decision becomes final after one year if a Notice of Disagreement is not filed. *Percy v. Shinseki*, 23 Vet.App. 37, 41 (2009) (citing 38 U.S.C. § 7105(b)(1)). Favorable final decisions are revised only when they contain clear and unmistakable error, an error long described by this Court as being an "undebatable" error. *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc) ("The words 'clear and unmistakable error' are self-defining. They are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made."); *see also* 38 U.S.C. § 5109A(a) ("A decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error."). Moreover, although the Court has not addressed whether clear and unmistakable error is a jurisdictional requirement to reversing an otherwise final decision on a claim, the issue is so analogous to the fact that new and material evidence is a jurisdictional requirement for the Board to reopen a claim, that it should be addressed. *See e.g.*, *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) (holding that pursuant to 38 U.S.C. 5108, "the Board does not have jurisdiction to consider a claim which it previously adjudicated unless new and material evidence is presented, and before the Board may reopen such a claim, it must so find."); *compare* 38 U.S.C. § 5108 (new and material evidence required to reopen a claim) *with* 38 U.S.C. § 5109A (clear and unmistakable error required to revise RO decisions) and § 7111 (same as to Board decision).

In the decision on appeal, the Board acknowledged that the regional office cleared Mr. Mountford of fugitive felon status in July 2004 and reversed any recoupment action, but then later, without explanation, adjudicated the matter again in August 2006, this time unfavorably. The record reflects that neither the August 2006 decision nor the Board decision on appeal gave any

consideration to the fact that clear and unmistakable error was required to overturn the 2004 decision.

Given the natural meaning of "fugitive," the fact that Mr. Mountford was not aware a warrant was out for his arrest and took prompt corrective action upon being told of the warrant, the prospective nature of section 5313B in authorizing benefit payments to be stopped, and the Secretary's own M21-MR guidance that recoupment is not warranted if the veteran was not aware that he was the subject of an outstanding warrant, as is the case here, the 2004 decision cannot reasonably be said to be the product of clear and unmistakable error.[10]

---

[10] My colleagues's suggestion that the RO may have reinstated Mr. Mountford's benefits based upon a lack of information regarding the date the warrant was served is pure conjecture, without any basis in the record. *Ante* at 3. Nothing in the record on appeal suggests confusion by the RO, as opposed to implementation of the very concept now contained in the M21-MR that benefits not be taken retroactively if the veteran was not aware he was the subject of an outstanding warrant. Even assuming confusion by the RO, it remains unexplained how a lack of information regarding the date Mr. Mounford was served with the warrant could have been a basis for reinstating benefits and two years later reversing that reinstatement. The date appears to be relevant only to when Mr. Mountford had knowledge that a warrant issued for his arrest, which would support a revocation of benefits back only to that date.

Additionally, my colleagues state that Mr. Mountford does not dispute any of the "facts" laid out in the Court's majority opinion. *Ante* at 3. Such a statement is presumptive in that Mr. Mountford not only has not had an opportunity to review the facts laid out by the majority, but unwarranted liberty has been taken with regard to what might be a "fact."

For example, my colleagues state as a fact that the Secretary did not learn until July 2006 that Mr. Mountford had been served with a warrant in April 2004. But, the cite referenced by my colleagues as support for this "fact" states nothing about this being the first notification to the Secretary. R. at 162. Additionally, my colleagues definitively state that no evidence of the warrant being cleared was submitted to the RO with Mr. Mountford's American Legion assisted June 2004 submission seeking reinstatement, but the record on appeal does not state what documents were or were not attached thereto. Moreover, the record on appeal is not the entire record, *see* VET. APP. R. 28.1 (requiring a record of proceedings to be submitted for review, in lieu of the entire record), and when the Board has not addressed a matter and a party has not otherwise admitted a fact, there is no proper basis for an appellate court to state a fact that is not clear on its face in the record on appeal; to do that, the entire record would have to be reviewed, *see* 38 U.S.C. § 7261(b) (providing for judicial review on the record). Accordingly, remand for the Board to address a potentially important issue is appropriate in such circumstances. *See Maggitt v. West*, 202 F.3d. 1370, 1377-78 (Fed. Cir. 2000) (holding that the Court has the discretion to hear or remand legal issue raised for the first time on appeal). Furthermore, the submission by a congressionally authorized veterans service organization that explicitly states a warrant has been cleared is evidence; it may not be accepted by the factfinder, but it is evidence. *Flynn v. Brown*, 6 Vet.App. 500, 504 (1994) (holding that the hearsay rule does not apply to the VA claims adjudication process); *see also* R. at 290. And, nothing in the record on appeal indicates the representation of the American Legion was not accepted by the RO or that the warrant was not cleared; indeed, the evidence of conviction and time served is evidence that the warrant was resolved.

For whatever reason, my colleagues also state that "Mr. Mountford was *acutely aware* of the conditions of his probation, including his duties to pay supervisory fees and submit monthly reports to his probation officer. He *certainly was advised and understood* the consequences of his failure to comply with the terms and conditions of his probation." *Ante* at 7 (emphasis added). No citation to the record on appeal is provided for such definitive findings of Mr. Mountford's awareness and understanding, and no such finding was made by the Board. A guilty finding presumes the necessary mens rea, but that is a far cry from "acute awareness" and being "advised" of and having "understood"

15

Although Mr. Mountford's counsel stated at oral argument that she did not raise this issue in her briefing because she thought this procedural error was harmless, her thinking is not dispositive. For one, as noted above, whether or not there was clear and unmistakable error in the July 2004 RO decision raises a question of jurisdiction, an issue that cannot be waived. *Jarrell v. Nicholson*, 20 Vet.App. 326, 331 (2006) (en banc). Second, there is no indication this issue was discussed with her client. The assertion of a veteran's counsel cannot always control the outcome. *See Janssen v. Principi*, 15 Vet.App. 370, 374 (2001) (counsel's waiver of a guaranteed right is effective if the appellant has knowledge of the right and voluntarily intends to relinquish that right); *Jarrell,* 20 Vet.App. at 338 (Hagel, J., dissenting) (to be an effective waiver of a right, a claimant must have knowledge of a right and must intend voluntarily and freely to relinquish or surrender that right); *see also Davis*, *supra*. Moreover, it is the Court's statutory duty to "take due account of prejudicial error." 38 U.S.C. § 7261(b)(2); *Newhouse v. Nicholson*, 497 F.3d 1298, 1301 (Fed. Cir. 2007) ("[T]he Veterans Court [is] required to examine whether any errors by VA were prejudicial and [] it must do so based on the administrative record."); *Parker v. Brown*, 9 Vet.App. 476, 481 (1996) ("'Prejudice . . . means injury to an interest that the statute, regulation, or rule in question was designed to protect.'" (quoting *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996))). In the heat of aggressive oral argument, and given the obvious prejudice associated with adjudicating a matter under a far lesser standard than authorized by regulation, counsel's oral argument statement should not be accepted as a knowing waiver of the veteran's rights.

For these reasons, I respectfully dissent.

---

consequences. Indeed, the record on appeal reflects that Mr. Mountford is 100% disabled for schizophrenia.